Sybil BELL, Plaintiff-Appellant,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant-Appellee.

No. 850, Docket 83–6322.

United States Court of Appeals, Second Circuit.

Argued March 5, 1984.

Decided April 13, 1984.

Jeffrey D. Caldwell, Staff Atty., Nassau/Suffolk Law Services Committee, Inc., Hempstead, N.Y. (Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc., Hempstead, N.Y., of counsel), for plaintiff-appellant.

Janice Siegel, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D. N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and MANSFIELD and CARDAMONE, Circuit Judges.

MANSFIELD, Circuit Judge:

Sybil Bell appeals from a judgment of the Eastern District of New York, Mark A. Costantino, *Judge,* affirming a decision of the Social Security Administration, Department of Health and Human Services (HHS), entitling her to Supplemental Security Income (SSI) benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, as of January 26, 1982, but not prior to that date. Bell argues that the Secretary's determination of January 26, 1982, as the onset date of Bell's disability was not supported by substantial evidence, that the Administrative Law Judge (ALJ) failed to develop the record adequately, and that the district court erred in declining to issue a declaratory judgment that the Appeals Council's ten-month delay in ruling on Bell's claim violated the Social Security Act. We reverse the district court's affirmance of the Secretary's denial of benefits for the period prior to January 26, 1982, with directions to enter a modified judgment awarding appellant SSI benefits as of June 4, 1981. In all other respects the judgment is affirmed.

Sybil Bell is a 48-year old high school graduate with a history of mental problems. She was hospitalized at Pilgrim State Psychiatric Center in 1967, at the Hoch Psychiatric Center in late 1977 through early 1978, and twice at the Nassau County Medical Center, first in September 1980 for three weeks and again in January 1981 for another three weeks. As early as March 15, 1978, upon her release from the Hoch Psychiatric Center, she was diagnosed as suffering from chronic undifferentiated schizophrenia. The same diagnosis was made upon her admission to the Nassau County Medical Center on January 1, 1981, and on her discharge on January 22, 1981. Ms. Bell formerly worked as a nurse's aide, but the record indicates that she has been unemployed for the past 20 years.

Bell applied for SSI benefits on June 4, 1981, claiming disability due to emotional problems and to pain in her left hip, the latter complaint apparently attributable to a childhood injury that twice resulted in surgery. The application was denied initially and upon reconsideration, whereupon Bell requested a hearing to review the determination. A hearing was held on January 26, 1982, before ALJ L. Charles Leonard of the Social Security Administration's Office of Hearings and Appeals. Although Bell obtained counsel several days before the hearing, she lacked the presence of mind to inform her counsel of the impending hearing. When questioned by the ALJ as to whether she was represented by an attorney, Ms. Bell replied that she was not. The hearing proceeded with her being treated as acting *pro se,* but the ALJ later permitted her counsel to make additional submissions, which were included in the record. It does not appear that Bell's counsel requested further hearings to present live testimony. Thus the record before the SSA Office of Hearings and Appeals consists entirely of documents except for Bell's brief testimony in response to questions by the ALJ.

The ALJ issued his decision on March 30, 1982, finding Bell unable to perform work-related mental functions as of January 26, 1982, the date of the hearing. He went on to state that "[a] careful appraisal of the medical record leads to the conclusion claimant was not disabled prior to January 26, 1982." Bell took exception to the latter finding and on May 14, 1982, she filed a request for review by the Social Security Administration's Appeals Council.

Despite numerous inquiries from Bell's attorneys, the Appeals Council still had not rendered a decision 10 months after the request was filed. On March 9, 1983, Bell filed this action in the Eastern District of New York, seeking a Writ of Mandamus directing the Appeals Council to render a decision and a declaratory judgment that the Secretary's failure to render a decision violated her responsibilities under the Social Security Act, 42 U.S.C. §§ 1381a, 1383(a)(1), and the Administrative Procedure Act, 5 U.S.C. § 555(b). Only 15 days later, on March 24, the Appeals Council denied the request for review, so that the ALJ's opinion became the final decision of the Secretary. On May 13, 1983, Bell amended her complaint to exclude the request for a Writ of Mandamus and to add an appeal from the Secretary's determination that the onset date of her disability was January 26, 1982.

On September 19, 1983, Judge Costantino affirmed the decision of the Secretary, finding that it was supported by substantial evidence. He did not address the other two claims raised by the amended complaint. Appellant timely filed a notice of appeal on October 21, 1983.

## DISCUSSION

Bell's principal argument is that the Secretary erred in not finding that she was disabled prior to January 26, 1982. The burden of proving a disability, it should be noted at the outset, lies with the claimant. *Carroll v. Secretary of H & HS*, 705 F.2d 638, 642 (2d Cir.1983).[1] Moreover, the Secretary's findings with respect to disability are factual and will not be disturbed by a reviewing court as long as they are supported by substantial evidence, 42 U.S.C. § 405(g), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2d Cir.1972).

In our view the Secretary's determination in the present case that Bell's disability did not begin before January 26, 1982, is unsupported by substantial evidence. With regard to the onset date of appellant's illness, the ALJ reasoned as follows:

"A careful appraisal of the medical record leads to the conclusion claimant was not disabled prior to January 26, 1982. A report from Dr. Robert Boese, board-certified consultant physician who examined the claimant on September 18, 1981 reveals that the claimant retained the physical capacities to perform, at least, light work as described in Section 416.967(b), Regulations No. 16.... The report from the claimant's treating psychiatrist [Dr. Steven Alper] demonstrates she was not significantly limited from performing basic work related mental functions on August 14, 1981, the date of the doctor's last examination. (Exhibits 31 and 32). Consideration of the claimant's physical and mental impairments, singly or in combination, requires a finding she was not unable to perform any substantial gainful activity prior to January 26, 1982."

In our view this determination cannot withstand scrutiny even on its own terms. Moreover, it fails to take into account significant undisputed portions of the record, all of which is documentary except for Bell's own testimony, that clearly establish Bell's disability at least as early as June 4, 1981. Dr. Boese, who rendered one of the two reports upon which the ALJ relied, is a surgeon who was consulted only with respect to Bell's physical problems. Since the ALJ's finding of disability was based exclusively on Bell's mental condition, Dr. Boese's conclusion that Bell was physically

---

1. Title 42 U.S.C. § 423(d)(5) provides that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

   Title 42 U.S.C. §§ 1382c(a)(3)(A) and (B) provides in pertinent part:

   "(3)(A) An individual shall be considered to be disabled ... if he is unable to engage in any substantial gainful activity by reason of any medically determinable ... mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months....

   "(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his ... mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

Title 20 C.F.R. § 416.921(a) provides: "An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities."

able to work as of September 1981 has no logical relationship to determining the date of onset of her mental disability.

Thus, the only relevant report on which the ALJ based his decision was the August 14, 1981, report of Dr. Steven Alper, a psychiatrist at the Nassau County Medical Center Day Hospital who was Bell's treating physician and saw her five times each week following her release from the hospital in January 1981. It is true that in filling out the SSA evaluation form, which requires the physician to choose a rating of "none, mild, moderate or severe" for the patient's impairment in each of nine categories, Dr. Alper indicated that Bell's impairments ranged only from mild to moderate. In explaining his evaluations, however, he wrote that Bell "continues to be emotionally disabled. She has difficulty handling any stress or pressure from a work situation." Read as a whole, Dr. Alper's report is far from a flat assertion that Bell was not disabled at that time; at best, the report is ambiguous, which should have prompted the ALJ to look further at the record. Moreover, Dr. Alper's August 14, 1981 report in no way addresses the period between that date and January 26, 1982. Thus, the documents cannot be used to establish a January 26 onset; the ALJ is not entitled to assume that Ms. Bell suddenly became schizophrenic on the day of her hearing, absent some evidence to support such a view. Even giving Dr. Alper's report the interpretation adopted by the ALJ, he was required to examine the record further to determine the onset date.

Such an examination would have revealed undisputed evidence that Bell was disabled prior to January 26, 1982, and at least as early as June 4, 1981, when she filed her application. A careful reading of two documents submitted after the hearing establishes an onset date earlier than January 26, 1982. One of the documents is an assessment dated February 8, 1982, by Nancy Iannone, Bell's "Case Manager" at the Nassau County Department of Mental Health Community Support System Program, who had supervised Bell since August 28, 1981. She reported that Bell

"needs constant structuring to perform tasks but has little understanding." A similar letter dated February 25, 1982, from Vivian Pollack, a Psychiatric Social Worker at the Nassau County Medical Center who worked with Bell from January 23, 1981 until October 30, 1981, stated that "[i]t had been apparent during this time that when Ms. Bell faced anxiety provoking situations she verbalized paranoid and religious delusions as well as experienced auditory hallucinations." The ALJ, of course, was not required to credit the information contained in these letters, but it is quite apparent that he did so since he expressly relied on them in finding that Bell was disabled. Having done so, he was not free to disregard them in determining the onset date of that same disability. It is conceivable that the ALJ was misled by the dates on which the letters were prepared (all were written after Bell's counsel belatedly learned of the January 26 hearing), but each letter quite clearly states the period it covers. The letter from Ms. Pollack in particular explains that it applies to a time period preceding the June 4, 1981 application for benefits.

There are numerous other documents in the record supporting Bell's contention that were not even mentioned by the ALJ. A psychiatric report by Dr. John Bellia, dated August 14, 1980 (just prior to Bell's three-week hospitalization beginning in September of 1980), found her moderately to severely impaired and concluded that she "probably has residual schizophrenia." In December 1980, Dr. Leonard Frank, also a psychiatrist, examined Bell and found that "[s]he is obviously disabled due to mental illness and as such I think that she would tend to be considered disabled by you. As far as being able to do any kind of job or hold down any kind of job now, I don't feel that she would be able to do this." In January 1981 Bell was again hospitalized. Such is the state of the record on Bell's mental condition prior to her June 1981 application for benefits.

On June 22, 1981, three weeks after her application for benefits was filed, another

examining psychiatrist, Dr. Robert Ferrell, again diagnosed her as suffering from chronic undifferentiated schizophrenia, although he considered her to be in "fair to good remission;" he recommended continuing treatment and vocational rehabilitation, which is only a step toward employability. In November 1981 the Rehabilitation Institute referred Bell to a clinical psychologist, Dr. Edmund Neuhaus, who concluded that "[i]n view of her marginal functioning ... it may be difficult for Sybil to sustain herself in [factory] work in order to meet a competitive level of productivity. Competitive employment, therefore, is highly problematical. A Sheltered Workshop setting might ultimately be the most realistic vocational goal for her." The Associate Director of the Rehabilitation Institute came to a similar conclusion in a letter dated February 1, 1982, based on observations beginning in November 1981: "all indications are that she will require a sheltered workshop setting and will not be able to cope with competitive employment."

In short, there is no evidence, much less substantial evidence, supporting the ALJ's determination that Bell's disability began on January 26, 1982. While a cursory examination of the treating psychiatrist's report of August 1981 might suggest that Bell was not disabled as of that time, a more careful reading of that document and of the record as a whole demonstrates that Bell's impairment existed at least as early as June 4, 1981, the date she filed her application for SSI benefits. It was error for the Secretary not to so find, and for the district court to affirm the Secretary's erroneous finding.[2]

The judgment of the district court is affirmed in part and reversed in part. Title 42 U.S.C. § 405(g) empowers reviewing courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In this case no remand to the Secretary for rehearing is necessary. The case is remanded to the district court for entry of a judgment modifying the Secretary's decision by directing that appellant be awarded SSI benefits as of June 4, 1981.

---

**2.** In view of our decision to the effect that Bell is entitled to SSI benefits as of June 4, 1981, discussion of her other arguments is unnecessary. However, it should be noted, in response to her argument that the ALJ failed to develop the record adequately to compensate for her *pro se* status, *see Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980), that the ALJ permitted Bell's counsel to make additional submissions after the hearing, thereby curing any defects that might otherwise have existed. As for Bell's argument that the district court should have granted a declaratory judgment that the Appeals Council's 10-month delay was a violation of the Secretary's duty to render a decision within 90 days pursuant to 42 U.S.C. §§ 1381a, 1383(a)(1), the claim is now moot since such a judgment would not have any effect on the controversy now before this court.