John MAISCH, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 84 Civ. 2822 (RWS).

United States District Court, S.D. New York.

March 22, 1985.

Marc L. Ames, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Neal S. Mann, Asst. U.S. Atty., New York City, for defendant.

## OPINION

SWEET, District Judge.

This is an action brought by plaintiff John Maisch ("Maisch") under section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (the "Secretary"), which denied Maisch's application for federal disability insurance benefits. Maisch has now moved pursuant to Fed.R. Civ.P. 12(c) for judgment on the pleadings. The Secretary has cross-moved for an order pursuant to Rule 12(c) affirming the decision. For the following reasons, the decision of the Secretary is reversed, and the case is remanded to the Secretary for further proceedings consistent with this opinion.

**Prior Proceedings**

Maisch filed an application for Social Security Disability Benefits ("Disability Benefits") on February 11, 1980, alleging that he had been disabled since May 7, 1979 due to back injuries he sustained while performing his job. His application was denied initially and on reconsideration, and Maisch subsequently requested a hearing to review his application. The hearing was held on July 8, 1980. Maisch appeared before Administrative Law Judge Jerome Feiner ("Feiner"), who considered the case *de novo*. On October 31, 1980, the Administrative Law Judge ("ALJ") found that Maisch was not under a disability, and the Appeals Council affirmed that determination. Maisch sought review of the Secretary's decision by commencing an action on March 9, 1981, filed under Docket No. 81 Civ. 1347 (MP). By order dated September 25, 1981, the Honorable Milton J. Pollack, United States District Judge for the Southern District of New York, remanded the case to the Secretary for further consideration under 20 C.F.R. App. II sub-part P. because he found that the ALJ did not comply with the standard set out in *Gold v. Secretary of HEW*, 463 F.2d 38 (2d Cir. 1972). Pursuant to the court's order, a new hearing was held on March 18, 1983 before ALJ Feiner, who considered the case *de novo*. Maisch was represented by counsel. On June 30, 1983, the ALJ found that Maisch was disabled due to a mental impairment as of March 2, 1982, but not prior thereto. On December 29, 1983 the Appeals Council adopted the decision of the ALJ which then became the final decision of the Secretary. Maisch commenced the instant action on April 20, 1984 to review the final decision of the Secretary.

**The Record Below**

Maisch was born on September 21, 1934 and at the time of the second hearing was 48 years of age. He completed most of high school and worked as a rigger and crane foreman for a utilities company for over 28 years. On May 7, 1979, Maisch suffered an occupational injury after falling down a flight of stairs, sustaining a low back injury and fracturing ribs. On the date of his injury Maisch was examined by Dr. Francesco Cavallo ("Dr. Cavallo"), a general practitioner. Dr. Cavallo treated Maisch weekly through at least July 1980. In a report dated May 21, 1980 Dr. Cavallo stated that examination of that date revealed that Maisch had tenderness of the cervical, thoracic and lumbar spine as well as left shoulder and wrist. He had limited flexion of the lumbar spine and walked with an antalgic gait. Diagnosis was chostochondral detachment of the right ribs with thoracic spine sprain and lumbosacral derangement. Dr. Cavallo assessed Maisch's residual functional capacity and determined that in an eight hour work day Maisch could sit, stand and walk for one hour each, occasionally lift and carry up to ten pounds and could not use his left hand for repetitive action. In a subsequent report dated July 2, 1980 Dr. Cavallo found that Maisch was totally and permanently disabled with a diagnosis of low back derangement with discogenic disease of L5–S1.

Approximately two weeks after his accident, on May 20, 1979 Maisch was treated at the emergency room in Huntington Hospital complaining of pain in his rib cage and upper back. It was felt that Maisch had a possible fracture in the eleventh rib on the right side. He was discharged with pain medication and told to visit his physician.

The record contains a report dated July 24, 1979 from Dr. Anthony Puglisi ("Dr. Puglisi"), a board certified orthopedic surgeon. His examination revealed limitation of range of motion of the lumbosacral spine. Straight leg raising was positive at 60 degrees bilaterally but deep tendon reflexes were normal. X-rays of the lumbosacral spine revealed some narrowing of the L5–S1 interspace as well as traction spurs and other degenerative changes of the lower lumbar spine. Dr. Puglisi diagnosed low back derangement and felt that Maisch would benefit from a course of bedrest, pelvic traction and medication. He felt that Maisch was temporarily disabled.

On February 25, 1980 Dr. Saverio Franco ("Dr. Franco"), a board certified internist,

reported the results of seven examinations of Maisch. He felt that Maisch had a diagnosis of low back derangement. Examination of January 10, 1980 revealed Maisch's back was straight. He was able to flex to 75 degrees with no spasms. Deep tendon reflexes were normal and straight leg raising was negative. Dr. Franco stated that Maisch's absence from work was considered indefinite.

Maisch was examined on seven occasions by Dr. William Jaffe ("Dr. Jaffe"), a board certified orthopedic surgeon. Dr. Jafee's report of July 1, 1980 referred to a prior report after his first examination of September 28, 1979. In this report while finding some positive physical findings, Dr. Jaffee stated that he did not feel Maisch would be permanently or seriously disabled. He also stated that if Maisch's symptoms diminished he would suggest he return to light duty. Dr. Jaffee did, in fact, recommend light duty for Maisch after his examination of December 11, 1979 and again after his examination of January 8, 1980.

In order to obtain a more definite assessment of Maisch's orthopedic impairment, several consultative examinations were requested. On August 25, 1980 Maisch was examined by Dr. Richard Goodman ("Dr. Goodman"), a board certified orthopedic surgeon. Physical examination revealed some limitation of range of motion of the lumbar spine. Knee and ankle reflexes were three plus and equal bilaterally. Neurological examination was within normal limits. In the sitting position straight leg raising was negative to 90 degrees bilaterally. When lying down straight leg raising was limited to 20 degrees but with a negative Lasegue sign. X-rays of the lumbosacral spine revealed moderate narrowing of the L5 interspace with slight degenerative changes of the lumbosacral spine and slight spondylosis of the lumbar spine. It was the opinion of Dr. Goodman that while Maisch had some loss of motion of the lumbar spine this was partially due to spondylosis and partially on a voluntary basis. He felt that with proper physical therapy stimulation Maisch could sit, stand and walk for eight hours in an eight hour day and continuously lift and carry up to 50 pounds, and that Maisch could use his hands for repetitive actions. It does not appear from Dr. Goodman's report that he actually examined Maisch's hands.

At the first hearing, Maisch testified that because of almost continuous severe back pain, he is unable to sit for more than 45 minutes, after which he must stand for about a half hour, that he is unable to stand for more than an hour, and that he is unable to drive a car. He also testified that he was able to do a little housework, take care of most of his personal needs, and swim for short periods of time.

On the basis of the above evidence, the ALJ concluded at the end of the first hearing that Maisch possessed the residual functional capacity to perform at least sedentary work and that he was therefore not disabled. He reached this conclusion by weighing the evidence presented by the various doctors as to Maisch's physical capacity and by considering Maisch's allegations of pain. Following Judge Pollack's remand for failure to comply with the appropriate standard, the Appeals Council asked the United States Attorney's Office to provide further information as to the basis for remand due to the brevity of the court order. The U.S. Attorney's office was advised the Appeals Council that Judge Pollack believed there was a need for vocational evidence in light of what he considered to be a showing of physical problems, that he queried whether the ALJ had given appropriate weight to Maisch's subjective testimony or to the reports of Maisch's treating physicians, and that he was concerned as to whether Maisch was allowed to have counsel represent him at a rehearing of the ALJ's opinion.

Upon remand, additional evidence was presented for the ALJ's consideration.

On May 27, 1982 Maisch was examined by Dr. Harold Massoff ("Dr. Massoff"), a board certified consultative orthopedic surgeon. His physical examination revealed that Maisch had a deep tan from the waist

up including the upper extremities and when the wrist support was removed from the left wrist there was no lightening of the tan. When Maisch sat over the side of the table he was able to extend his knees fully. Straight leg raising was positive at 60 degrees but when he flexed his hips he could go to 90 degrees. Left straight leg raising was positive at 60 degrees and an attempt to passively increase range of motion was met by resistance. Ankle jerks and knee jerks were bilateral and equal. He had a socklike hyperesthesia bilaterally from the ankles to the toes. He held his lumbar muscles tightly with firmness of the paraspinal musculature. There was limitation of range of motion of the lumbar spine. X-ray of the lumbosacral spine revealed narrowing of the L5–S1 interspace. Dr. Massoff's diagnosis was low back syndrome with possible radicular symptoms and some unphysiological findings of pain distribution and hyperesthesia. Dr. Massoff assessed Maisch's residual functional capacity and based upon this assessment in an eight hour work day Maisch could sit for six hours, stand and walk for two hours each, occasionally lift up to 20 pounds and occasionally carry up to 25 pounds. He could use his hands for repetitive actions bilaterally.

The record contains an attending doctor's progress report to the Workers' Compensation Board by Dr. Kenneth Glass ("Dr. Glass"), an orthopedic surgeon. This report was dated April 1, 1981. Dr. Glass gave Maisch the diagnosis of cervical and lumbar sprain. He stated that Maisch was disabled as of the time of his report. He noted that Maisch was going for physical therapy and using a brace.

On March 4, 1982 Maisch was examined by Dr. Justus Kaufman ("Dr. Kaufman"), an abdominal surgeon who had considerable experience as an orthopedic surgeon, at the request of his attorney. Physical examination revealed that he appeared in acute discomfort. He walked with a decided limp. Examination of the back revealed loss of the normal lumbar curve. Tenderness was present over the lower lumbar vertebra. Range of motion of the lumbar spine was markedly limited and he could not stand on his heels or toes. There was no atrophy of the thighs or calves. Straight leg raising was positive at 45 degrees bilaterally with positive Lasegue and Patricks signs. There was weakness and extension of the big left toe present and bilaterally present Ely signs. Cervical spine revealed moderate restriction in all motions. Marked course tremors were present in both outstretched hands. Examination of the heart revealed tachycardia of 110 with elevated blood pressure at 150/104. There were narrowing arterioles in the fundi. Examination of the lower extremities revealed no pulsation in the right femoral artery and in the left dorsalis pedis. Dr. Kaufman's diagnosis was lumbar hypertrophic osteoarthritis associated with discogenic disease, hypertrophic osteoarthritis of the neck, diabetes, hypertension and arteriosclerosis obliterans involving the lower extremities associated with calcification of the abdominal aorta and its iliac branches. Dr. Kaufman opined that Maisch was totally disabled. In a subsequent report dated April 21, 1982 Dr. Kaufman noted that on March 26, 1972 Maisch sustained a fracture and subluxation of the navicular bone. Examination of the left upper extremity revealed a 25 percent restriction in dorsi and palmar flexion of the wrists. Tenderness was present over the navicular bone. Claimant had moderate weakness in hand grasps and tenderness over the tip of the thumb. X-ray of the left hand revealed an old fracture of the navicular bone with evidence of osteoporosis and arthritic changes in the carpal bones. Dr. Kaufman also appeared and testified at the hearing. His testimony comported with his reports. He stated that Maisch's hypertension was under good control with medication. Dr. Kaufman assessed Maisch's residual functional capacity and based upon this assessment he testified that Maisch could only walk one block before his legs would become numb and he could only sit and stand one-half hour without pain. He also testified that he gave

Maisch the diagnosis of diabetes strictly by history.

Maisch was examined on two occasions by Dr. John Bellia ("Dr. Bellia"), a board certified psychiatrist. A mental status examination on March 2, 1982 revealed that Maisch was "constantly choked up," in obvious emotional distress and cried a number of time. He had symptomatology of a seriously depressed and anxious individual. He did not socialize at all. Dr. Bellia felt that Maisch had symptoms indicative of a major depressive disorder. He had a disphoric mood, usually of depression and a loss of interest in pleasure in almost all activities. The disturbance was persistent and associated with other symptoms, such as insomnia, psychomotor agitation, loss of energy and fatigue and feelings of worthlessness. Suicidal ideation was present, as was anxiety. His anxiety was manifested by palpitations, difficulty in breathing, dizziness and vertigo as well as hyperesthesias. During the examination he was easily distracted. Dr. Bellia also appeared and testified at the hearing. He testified that he has given Maisch psychotherapy on two occasions in his office and has spoken to Maisch numerous times over the phone. He did not place Maisch on any psychotrophic medication because of all the other medication he was taking. He felt Maisch was credible and his findings were consistent with Maisch's allegations. Maisch was unable to relate to others. It was Dr. Bellia's opinion that Maisch could not be competitive or productive. He had severe difficulty in concentrating and could not even read a newspaper. He could not retain information and his frustration tolerance level was extremely low. He could not tolerate even ordinary or work related stress and could not meet productive standards. Dr. Bellia testified that these findings have been present since his examination of March 2, 1982 at the same level of severity. But he could not say how depressed or anxious Maisch was after his injury or at any time up to the date of his examination.

The record contains a report from Seymour Seltzer ("Seltzer"), a registered physical therapist dated November 29, 1982. Seltzer stated that Maisch appeared for treatment on five occasions from February 26, 1981 through March 31, 1981. He was referred to Seltzer by Dr. Glass. During the course of treatment Maisch complained of pain in his neck and low back areas.

Dr. David Vandergoot ("Dr. Vandergoot"), vocational consultant appeared and testified at the second hearing. Dr. Vandergoot reviewed the medical evidence of record and the testimony at the hearing prior to his testimony. It was the opinion of Dr. Vandergoot that based upon the mental status findings and residual functional capacity as set forth by Dr. Bellia, Maisch could not engage in any substantial gainful activity because of his difficulty in concentrating, problems with interaction and severe inability to deal with stress. He further testified based upon a hypothetical question that leaving aside any psychiatric disorders, if Maisch could perform sedentary unskilled work, there were jobs that he could perform such as wire worker, clerical sorter, order clerk or sedentary cashier work. Maisch acquired skills that were transferrable to other semi-skilled and/or skilled work sedentary jobs from his past relevant work. These skills included ability to follow instruction, ability to use hand and power tools, ability to estimate distance and planning work of others. The semi-skilled and/or skilled sedentary jobs that these skills were transferrable to include sedentary assembly and inspecting jobs. In response to another hypothetical question, Dr. Vandergoot testified that if Maisch was ambidextrous and could not use his left hand, he could do most of the sedentary jobs Dr. Vandergoot had previously enumerated.

At the second hearing, Maisch repeated the substance of his testimony at the original hearing. In addition, he testified about his mental state. He testified as to his feelings of worthlessness and helplessness and stated that his emotional problems began when he became incapable of paying his bills. He also testified that he has problems with his left wrist that required

him to wear a brace when getting up and down. Additionally, he stated that he is ambidextrous, although he does more with his left hand than his right.

Mrs. Maisch, Maisch's wife of over twenty-five years, also testified at the second hearing. She stated that Maisch was depressed right from the time of the accident and that beginning at that time she was afraid to leave him alone due to his feelings of worthlessness and because of her fear that he might be suicidal. In response to a question by the ALJ as to any changes in his emotional condition from the time of the accident to the present that it was "maybe a little worse." The record also includes a letter from Mrs. Maisch to Maisch's attorney, dated December 31, 1980 which Mrs. Maisch adopted at the second hearing as her testimony. In that letter, she wrote that she was concerned about her husband's emotional state, that he "feels so useless to himself," that he had been "very depressed" since the accident, and that he is in constant pain.

At the conclusion of the second hearing, the ALJ considered the medical evidence presented by Drs. Cavallo, Glass, Kaufman, Puglisi, Goodman, Jaffee and Massoff, as well as the testimony of Dr. Vandergoot and Maisch's allegations of severe pain. He concluded that Maisch suffered from a severe sprain of the cervical and lumbar which prevented him from performing his past work, but that he retains the residual functional capacity to engage in sedentary work and is therefore not disabled. On the basis of Dr. Bellia's testimony, he concluded that Maisch had a severe psychiatric impairment as of March 2, 1982 which would prevent him from engaging in any substantial painful activity. Because he found the record "totally devoid of any evidence of a psychiatric impairment" prior to March 2, 1982, the ALJ found Maisch disabled since March 2, 1982 but not prior to that time.

Maisch now claims that there was not substantial evidence to support the ALJ's finding that he was not under a disability from May 7, 1979, the date of the accident, to March 2, 1982. He contends that as before the ALJ gave insufficient weight to the testimony of Maisch's treating physicians and to the testimony of Maisch and his wife, that there is not enough evidence to support the ALJ's conclusion that Maisch was capable to sedentary work, given the medical problems with his left hand, and that the ALJ's choice of March 2, 1982 as the date on which Maisch first became disabled was arbitrary.

**Discussion**

In reviewing a denial of Social Security disability benefits, a court's function is to determine whether the decision of the Secretary is supported by substantial evidence on the record as a whole. *Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 418 (2d Cir.1983); *Spicer v. Califano,* 461 F.Supp. 40, 45 (N.D.N.Y.1978); 42 U.S.C. § 405(g). Substantial evidence in this context has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Donato v. Secretary of Health and Human Services, supra,* 721 F.2d at 418. The reviewing court is not to decide the case *novo,* and where supported by substantial evidence the Secretary's findings of fact, as well as the inferences and conclusions to be drawn from those findings, are conclusive even where the reviewing court's independent analysis of the evidence may differ from the Secretary's analysis. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982). As the trier of fact, it is the function of the Secretary, and not the court, to resolve conflicts in the evidence and to pass on the credibility of witnesses. *Richardson v. Perales, supra,* 402 U.S. at 399, 91 S.Ct. at 1426; *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 705 (2d Cir.1980).

In assessing an individual's disability, the Secretary must consider: (1) the

objective medical facts, (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 n. 2 (2d Cir.1972); *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983).

For purposes of the Social Security Act, disability is defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In *Berry v. Schweiker,* 675 F.2d 464 (2d Cir.1982), the Second Circuit set forth a five-step sequence to be utilized in evaluating disability claims:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not

have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

675 F.2d at 467. *See City of New York v. Heckler,* 742 F.2d 729, 732 (2d Cir.1984); *Chico v. Schweiker,* 710 F.2d 947, 950–52 (2d Cir.1983); 20 C.F.R. 404.1520. The Second Circuit also set forth the burdens of proof on the various steps: the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one. *Berry v. Schweiker, supra,* 675 F.2d at 467. *See Carroll v. Secretary of Health and Human Services, supra,* 705 F.2d at 642.

In the present case the ALJ applied this analysis separately to Maisch's claims of physical or exertional disabilities and his claims of mental or non-exertional disabilities. As to the assertions of a mental disability, the ALJ found that although Maisch had met his burden of proving that from March 2, 1982 on he was so disabled that he was unable to perform substantial gainful activity, he had presented no evidence of mental disability prior to that time. As to the assertions of a physical disability, the ALJ concluded that while Maisch had met his burden of proof as to the first two steps of the analysis, he had failed to prove that his impairment was "listed." He further found that while Maisch lacked the residual functional capacity to perform his past work, he was capable of performing sedentary work.

### Non-exertional Impairment

The Secretary's determination that Maisch's mental disability did not begin before March 2, 1982 is unsupported by substantial evidence. With regard to the onset date of Maisch's mental disability, the ALJ reasoned as follows:

> The undersigned cannot find that the claimant was disabled by reason of his psychiatric impairment prior to March 2, 1982. The record is totally devoid of any

evidence of a psychiatric impairment prior to this time. At the hearing, Dr. Bellia testified that although the claimant's psychiatric impairment has maintained at the disabling level of severity since his examination of March 2, 1982 he was unable to state how severe the claimant's impairment was prior to his examination. As such, while the undersigned finds that the claimant has been unable to engage in any substantial gainful activity since March 2, 1982, I cannot find the claimant disabled prior to this date.

The ALJ's statement that "[t]he record is totally devoid of any evidence of a psychiatric impairment prior to this time" is not supported by the record. At the hearing, Dr. Bellia testified that "based on the history, it would seem he became depressed and anxious after his injury." He also stressed the role that Maisch's injury played in his psychological disorder, noting his feelings of uselessness and inability to produce or compete. He testified that "based on the history, it would seem that he became depressed and anxious after his injury" and also stated that "I think the level of severity has progressively increased," although he was unable to judge the point at which Maisch's impairment reached the level of severity that existed on March 2, 1982, the date of Dr. Bellia's first examination. The record also includes the testimony of both Maisch and his wife as to the onset of his psychiatric disorder. Mrs. Maisch testified that her husband's emotional upset began right "from the beginning" and that right after the accident she was concerned about his suicidal tendencies. She also stated that his emotional condition is "maybe a little worse" since May of 1979. Maisch himself testified that his emotional problems developed when he first became unable to handle his finances.

 Given the above testimony, the ALJ's claim that there was no evidence presented as to a psychiatric impairment prior to March 2, 1982 cannot withstand scrutiny. An ALJ has an obligation to consider more than just objective medical

facts and medical opinions when assessing an individual's disability: he should also consider the subjective evidence submitted by the claimant and his family. *See Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 41. An individuals own subjective estimation of his impairment is not, of course, in itself sufficient to establish a disability. *See Reyes v. Harris,* 482 F.Supp. 638, 641 (S.D.N.Y. 1979). In the present case, however, the record contains medical evidence of Maisch's mental impairment. Dr. Bellia's testimony suggested that the impairment existed prior to March 2, 1982, and therefore any finding of a disability prior to that time would be supported by more than just Maisch's subjective testimony. Furthermore, where it is not possible to reach a determination of disability based on expert medical opinion and evidence, subjective testimony by lay witnesses may be entitled to great weight if uncontradicted in the record. *See Laws v. Celebrezze,* 368 F.2d 640, 644 (4th Cir.1966). It was within the province of the ALJ to reject self-serving statements of a claimant and his family, but it was an error of law for him to fail to consider expressly such subjective complaints. *See Spicer v. Califano, supra,* 461 F.Supp. at 47–48. The ALJ was not entitled to assume that Maisch became mentally disabled on the day of Dr. Bellia's examination absent some evidence to support such a view. Instead, he was required to examine the record further to determine the onset date. *Bell v. Secretary of Health and Human Services,* 732 F.2d 308 (2d Cir.1984). For that reason, I reverse the decision of the ALJ and remand the case for further consideration of the date of the onset of Maisch's severe mental disability.

 In addition, even if on remand the judge concludes on consideration of all of the evidence that Maisch did not have a severe mental disorder qualifying as a "listed" impairment prior to March 2, 1982 he must still consider whether prior to that time his impairment was severe enough to limit Maisch's ability to do basic work activ-

ities. If he concludes that Maisch was severely impaired, he must consider whether prior to that time Maisch had a mental impairment which would prevent him from returning to his prior work. If he finds that Maisch was so impaired, he must then decide whether Maisch retained the residual functional capacity to engage in some sort of work. Because the ALJ concluded that there was no evidence of any psychiatric impairment prior to March 2, 1982, he failed to apply the five-step sequence required in evaluating disability claims. *See Berry v. Schweiker, supra,* 625 F.2d at 464. Given the fact that the record contains evidence that could support a finding of some level of mental disability prior to March 2, 1982, the ALJ must fully consider that evidence in accordance with the required sequence of evaluation.

**Exertional Impairments**

The ALJ made additional errors constituting adequate grounds for reversal in applying the relevant legal standards to Maisch's claims of physical disability and in concluding that Maisch was not disabled.

**1. Testimony of Physicians** The Second Circuit has repeatedly emphasized that a treating physicians' opinion is entitled to particular weight and is binding on the Secretary when it is not contradicted by substantial evidence. *See, e.g., Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir.1980). One of the bases for Judge Pollack's remand of the ALJ's first decision was his failure to give appropriate weight to the reports of treating physicians. The Second Circuit rule requires that "special weight ... be given to medical reports submitted by an applicant's attending physician even if there is contradicting medical evidence supplied by the agency-appointed physician." *Chiappa v. Secretary of HEW,* 497 F.Supp. 356, 360 (S.D.N.Y.1980). There is no requirement that medical opinions be necessarily supported by "objective" clinical or laboratory findings. *Spicer v. Califano, supra,* 461 F.Supp. at 45; *Cutler v.*

*Weinberger,* 516 F.2d 1282, 1286–87 (2d Cir.1975). Therefore, a medical opinion does not become unacceptable simply because it is based upon the claimant's symptomology. *Spicer v. Califano, supra,* 461 F.Supp. at 45.

In the case at hand, the ALJ correctly found that the medical evidence pertaining to Maisch's physical impairment was contradictory. In evaluating the varying reports, however, he expressly discounted the findings of Maisch's treating physicians, Drs. Cavallo and Glass, on the grounds that they were "totally devoid" of any physical findings or clinical and diagnostic findings. Because the ALJ rejected Maisch's physicians' opinions by using a standard contrary to the law, he failed to give appropriate weight to their reports. Furthermore, I question whether the other doctors' reports constitute substantial evidence sufficient to contradict expert opinions of the treating physicians. On remand, the ALJ should accord appropriate weight to the treating physicians' findings and should thoroughly examine the findings of the non-treating physicians to see if they are sufficient to contradict these findings.

**2. Combination of Impairments** 20 C.F.R. § 404.1522 specifically provides that the Secretary should combine unrelated impairments to see if together they are severe enough to prevent a claimant from doing substantial gainful activity. Similarly, 20 C.F.R. § 404.1545(a) provides that the Secretary should consider all known impairments together in order to determine residual functional capacity. Furthermore, it is the rule in the Second Circuit that "all complaints ... must be considered together in determining ... work capacity." *Gold v. Secretary of HEW, supra,* 463 F.2d at 42; *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir.1984).

In the present case, there is no evidence that the ALJ took into consideration both Maisch's mental and physical impairments in considering the severity of his impairment or his residual functional capacity.

His discussion of Maisch's mental disability is completely separate from his evaluation of his physical capabilities. The evidence submitted by the various doctors on which the ALJ relied to find that Maisch's physical impairments did not prevent him from engaging in substantial gainful activity and that he retained the residual functional capacity to do sedentary work did not appear to in any way take into account Maisch's alleged mental difficulties. When Dr. Vandergoot testified that, assuming Maisch had a residual functional capacity to perform sedentary jobs, unskilled sedentary jobs existed that Maisch could perform given his age, education and work history, the ALJ specifically told him not to consider Maisch's psychiatric profile in making this assessment.

 Given the fact that, as discussed above, the record contains evidence that might support the conclusion that Maisch had some sort of mental disability prior ·to March 2, 1982, the ALJ had an obligation to assess Maisch's allegations of mental disability in connection with his consideration of Maisch's physical problems. Even if the ALJ were justified in concluding that the evidence submitted by Maisch did not support an independent finding of either physical or mental impairment, the evidence taken as a whole might support the conclusion that Maisch was unable to engage in gainful activity or that he did not retain the residual functional capacity to engage in sedentary work. On remand, the ALJ must expressly consider the evidence of Maisch's alleged mental impairment in determining whether or not Maisch was capable of engaging in substantial gainful activity or retained sufficient residual functional capacity prior to March 2, 1982.

In concluding that Maisch was not disabled, the ALJ specifically found Rules 201.27 and 201.29 of Appendix 2, Subpart P., Part 404 of the Regulations applicable. However, the Regulations are only applicable where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule. The Regulations state:

> [w]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

Section 200.00(e)(2) of Appendix 2, Subpart P, Part 404. In the present case, the ALJ's failure to consider how Maisch's work capability might be affected by any non-exertional impairment would only be justifiable if he had correctly found that Maisch was in no way mentally impaired prior to March 2, 1982. Because the ALJ incorrectly determined that there was no evidence in the record of any mental impairment prior to March 2, 1982, his reliance on Rules 201.27 and 201.29 was incorrect. On remand, he must first assess all evidence of Maisch's mental impairment prior to that date and, if he finds that Maisch suffered from any mental impairment, no matter how unsevere, during the relevant time period he must take that impairment into account in determining Maisch's work capability.

 The record also contains conflicting evidence pertaining to Maisch's ability to use his left hand. It is unclear from the ALJ's report whether he found Maisch's ability to use his left hand impaired, al-

though the nature of his decision makes clear that if he found any impairment to exist he did not believe it to be severe. However, if the ALJ believed that such an impairment existed to any extent, he had an obligation to assess that impairment's affect on Maisch's overall job capacity and his express reliance on the Rules would be inappropriate. The explanatory material in Section 201.00(h) of Appendix 2 provides as an example of a situation where the rules are not applicable an individual with a permanent injury of the right hand limiting the individual to sedentary jobs which do not require bilateral manual dexterity. The Section notes that the rules cannot be applied where an "individual cannot perform the full range of work defined as sedentary." While Dr. Vanderoot testified that jobs exist which Maisch could undertake despite any limitations on his manual dexterity, his testimony would not justify the ALJ's express reliance on the Rules if he found Maisch's ability to use his hand impaired.

 Because Maisch's ability to use his left hand is an important element of his residual functional capacity, the ALJ should have expressly considered the medical evidence pertaining to his hand. On remand, the ALJ should first evaluate the medical evidence as to Maisch's manual dexterity in accordance with the discussion above as to the weight to be accorded the testimony of the various physicians, and then expressly assess Maisch's residual functional capacity in light of any manual impairment.

**Pain**

 In his motion papers Maisch also contends that the ALJ failed to give appropriate weight to Maisch's subjective claims of pain. It is well established that "subjective pain may serve as the basis for establishing disability, even if such pain in unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979) (emphasis and citations omitted); *Aubeuf v. Schweiker*, 649 F.2d 107 (2d

Cir.1981). It is within the discretion of the ALJ to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of pain felt by the claimant. *Marcus v. Califano, supra*, 615 F.2d at 28; *Bolton v. Secretary of Health and Human Services*, 504 F.Supp. 288, 291 (E.D.N.Y.1980). However, a claimant's subjective evidence of pain may not be disregarded solely because there is no objective evidence supporting his complaints. Furthermore, where medical evidence establishes a physical basis for the claimants' subjective complaints, the ALJ's right to make a credibility determination cannot of itself insulate his decision for review. *See Ghazibayat v. Schweiker*, 554 F.Supp. 1005, 1010–1011 (S.D.N.Y. 1983).

In his decision, the ALJ stated that he carefully considered Maisch's allegations of severe pain and found that prior to March 2, 1972 Maisch's pain was not so severe, constant or intractable so as to preclude the performance of sedentary work. He noted that Drs. Jaffe, Puglisi, Goodman and Massoff all considered Maisch's allegation of pain when they concluded that he was not severely disabled or incapable of performing sedentary work. He also noted that at the first hearing Maisch testified that he was capable of doing some light housework, taking care of his personal needs, and partaking in some recreation. Finally, the ALJ stated that he "carefully observed the claimant during the course of the first hearing and he did not appear in pain."

 I find that the ALJ's evaluation of Maisch's subjective evidence of pain was sufficient to uphold his determination that the pain was not disabling. The ALJ was entitled to evaluate Maisch's claims of disabling pain in light of the other evidence of record and to reject them as self-serving. While relying only on the opinions of the physicians would not have been appropriate, the ALJ's statements as to Maisch's ability to perform certain tasks make clear that the ALJ undertook an independent

assessment of Maisch's credibility. While I note that the ALJ's reference to his own observation of Maisch at the first hearing is questionable in light of the fact that the Second Circuit has raised doubts as to the propriety of subjecting claimants to a "sit and squirm" index. *See Aubeuf v. Schweiker, supra,* 649 F.2d at 113, the record as a whole makes clear that the ALJ gave sufficient weight to Maisch's own testimony.

For the reasons discussed above, the decision of the Secretary is reversed and the case is remanded for further consideration in accordance with this opinion. The case is closed with leave to reopen *ab initio,* on the specific understanding that the court retains jurisdiction, on motion and without the payment of filing fees, to enter all necessary orders or conduct any necessary future proceedings in the case, as if it had not been closed.

IT IS SO ORDERED.