**Mario ARROYO, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security, Defendant.**

**No. 96 Civ. 8080 (RWS).**

United States District Court, S.D. New York.

Aug. 19, 1997.

Legal Services for the Elderly, New York City (Malcolm B. Spector, of counsel), for Plaintiffs.

Mary Jo White, U.S. Atty., for the Southern District of New York, New York City (Susan D. Baird, Asst. U.S. Atty., of counsel), for Defendants.

*OPINION*

SWEET, District Judge.

Plaintiff Mario Arroyo ("Arroyo") has moved, pursuant to Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings. John J. Callahan, the Acting Commissioner of Social Security (the "Commissioner"), has cross-moved for an order reversing the decision of

the Commissioner and remanding the action for further administrative proceedings, pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, Arroyo's motion will be granted and the case will be remanded for the purpose of calculating and disbursing benefits for the period of May 1987 to January 17, 1992.

## Parties

Arroyo is a fifty-year-old resident of New York. He is currently disabled and receiving Social Security Disability ("SSDI") benefits.

Callahan became Acting Commissioner of Social Security on March 1, 1997, after this action was filed. Callahan is substituted for the originally-named defendant, Shirley S. Chater. See Fed.R.Civ.P. 25(d).

## Facts and Prior Proceedings

Arroyo is a high-school graduate, with one year of post-secondary education, and is married and has five children. He served in the United States Army, worked for the New York City Police Department and, most recently, for the Army National Guard. He was dismissed from his last employment in May 1987.

On October 3, 1989, Arroyo was given a medical assessment at a neighborhood health center. Among a checklist of physical ailments was an item denominated "mental status." The checklist indicates that Arroyo had no mental problems. However, the form does not indicate how that determination was made. Arroyo had several other encounters with the medical system between 1989 and 1991. There is no indication in the medical records that mental illness was diagnosed at any of those visits.

Arroyo was employed at Crystal Chemical Company ("Crystal") for eight weeks in 1990, but was terminated for tardiness, inability to perform his work and conflicts with other employees.

On May 9, 1991, Arroyo filed an application for SSDI benefits, alleging that he became disabled on October 15, 1990, the date on which he was terminated by Crystal. His application was initially denied.

In August 1991, Arroyo was prescribed an anti-anxiety and anti-depressant medication, which he continued to take at least until May 6, 1992. In January 1992, the Social Security Administration's psychiatric consultant, Dr. Roger Rahtz, wrote of Arroyo's mental condition:

Since 1987 when he lost his job, and since his separation from his wife, he has had recurrent depression, with suicidal thoughts.... He remains depressed, with no suicidal thoughts, but with persistent and significant insomnia as well as loss of interest and energy, poor self-esteem, and social isolation.

Dr. Rahtz did not expressly give an opinion about whether Arroyo was more or less disabled by his disorder at the time of the examination as he was in 1987.

After an April 13, 1993 hearing, an administrative law judge ("ALJ") found Arroyo entitled to benefits beginning May 6, 1992. On March 8, 1994, the Appeals Council affirmed the ALJ's finding of disability after May 6, 1992. However, because Arroyo was a class member in State of New York v. Sullivan, No 83 Civ. 5903(RLC) (S.D.N.Y.), the Appeals Council partially vacated and remanded for additional proceedings to determine whether Arroyo was entitled to benefits before May 6, 1992.

At the November 28, 1994 remand hearing, Arroyo presented a statement from his treating physician, Dr. Ira Jasser, expressing the opinion that Arroyo's mental illness had impaired his functioning from May 1987 to May 1992 to the same extent as or to a greater extent than it did from May 1992 to until 1994. He did not opine on whether Arroyo was "totally" unable to work, which is a question determined by the agency. See 20 C.F.R. § 404.1527(e). In an earlier statement, Dr. Jasser had stated he was uncertain as to whether Arroyo was "totally" unable to work prior to his first examination and did not specify a date of onset of total disability. A certified social worker who provided weekly psychotherapy to Arroyo beginning in August 1992 submitted an affidavit stating that she believed Arroyo's condition had been disabling beginning in May 1987, when his dismissal from his job triggered uncontrollable outbursts of anger and symptoms of depression, including suicidal ideation.

Arroyo himself testified that his rages and depression began in May 1987, when he lost his job. He testified that he lived in the streets for several years, because his wife asked him to leave when she could no longer tolerate his mood and behavior. Arroyo's wife corroborated this testimony at the hearing as well. She also testified that she had urged Arroyo to seek psychiatric care, but that he had resisted for several years. A long-time friend of Arroyo, Ronald Smith, also testified that Arroyo "went berserk" after being dismissed from his job in 1987. He stated that whereas Arroyo had been a " quiet" and "respectable" person who "didn't have any problems" prior to his firing, Arroyo had threatened to defenestrate himself, punched walls, forgot the purpose of errands and was verbally and physically abusive to his family after 1987. Like Mrs. Arroyo, he urged the plaintiff to seek psychiatric treatment beginning in 1987, but Arroyo refused and went into the streets instead. In 1990, Smith persuaded Crystal, his long-time employer, to hire Arroyo for a simple job of using a hose to fill bottles of disinfectant. Arroyo was let go after eight weeks because of tardiness, inability to perform the work, and complaints from co-workers.

On March 29, 1995, ALJ Frenkel concluded that Arroyo became disabled on January 17, 1992, the day on which Arroyo was examined by a Social Security Administration ("SSA") mental health consultant. The ALJ's decision was based on the result of the psychiatric examination performed by SSA at that time. The ALJ rejected the claim of an earlier onset date because no physician, prior to the January 1992 exam, had made a diagnosis of mental illness. He rejected Dr. Jasser's retrospective assessment because it was not based on contemporaneous observations. He did not expressly consider the testimony of Arroyo's lay witnesses. The ALJ's decision became the final decision of the Commissioner on September 3, 1996, when the Appeals Council denied Arroyo's request for review.

Arroyo filed the complaint in this action on October 28, 1996. He filed the instant motion on May 6, 1997. The Commissioner filed the cross motion on May 20, 1997. Oral argument was heard and the motions were fully submitted on June 18, 1997.

## Discussion

Judicial review of cases arising under Title XVI of the Social Security Act is provided for in Section 205(g):

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

42 U.S.C. Section 405(g).

The Commissioner concedes that the ALJ did not apply the appropriate standard to determine the onset date of Arroyo's mental disability. Social Security Ruling ("SSR") 83–20, which is binding on all SSA decision-makers (*see* 20 C.F.R. § 422.406(b); *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 1534 n. 3, 79 L.Ed.2d 878 (1984)), states that, for conditions other than trauma-induced injuries, the date of onset alleged by the applicant "should be used if it is consistent with all the evidence available." While medical evidence is central to the determination of the date of onset, other evidence, including work history and testimony from family, friends and former employers, must also be considered. SSR 83–20; *Maisch v. Heckler*, 606 F.Supp. 982, 991 (S.D.N.Y.1985) (ALJ's failure to expressly consider statements of claimant and family constituted legal error). An ALJ may not assume that a claimant developed a mental disorder on the date of SSA's consultative psychiatric examination, absent evidence to support such a conclusion. *See Bell v. Secretary of Health & Human Services*, 732 F.2d 308, 311 (2d Cir.1984) (ALJ "not entitled to assume" that claimant "suddenly became schizophrenic on the day of her hearing, absent some evidence to support such a view"); *Maisch*, 606 F.Supp. at 991; *see also Willbanks v. Secretary of Health & Human Ser-*

*vices,* 847 F.2d 301 (6th Cir.1988); *Lichter v. Bowen,* 814 F.2d 430, 435 (7th Cir.1987); *Swanson v. Secretary of Health & Human Services,* 763 F.2d 1061, 1065 (9th Cir.1985).

Thus, the ALJ's arbitrary use of the examination date and failure to consider the testimony of medical and lay witnesses regarding an earlier onset date require reversal of the Commissioner's decision. The parties disagree only about whether remand for another administrative determination of the onset date is appropriate. The Commissioner contends that the case should be remanded so that an independent medical advisor can assist the ALJ in determining the date of onset from the "ambiguous" or "insufficient" medical evidence about the claimant's condition during the time period from May 1987 to January 17, 1992.

Remand for a rehearing is often an appropriate remedy when the agency has applied an incorrect legal standard. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Maisch,* 606 F.Supp. at 991. However, "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," reversal and entry of judgment by the reviewing court is appropriate. *Parker,* 626 F.2d at 235.

■ The Commissioner contends that "inconsistencies" in the record warrant further factual hearings. However, the record overwhelmingly points to a date of onset of May 1987. The fact that no notation of mental disorders was made at a health assessment in 1989 or at other medical appointments does not indicate that there was no mental disorder at that time. The 1989 notation was on a checklist of physical disorders. There is no indication that a psychological evaluation was undertaken to determine whether Arroyo had a mental illness. It is likely that the "conclusion" reflected on the checklist, if it was based on anything, was based on Arroyo's self-report, at a time when he was denying his mental illness and refusing to seek treatment. It is not inconsistent with the other evidence of a 1987 onset that medical personnel did not identify Arroyo's psychiatric problem.

The Commissioner also contends that Dr. Jasser's two statements are "inconsistent" with respect to the date of onset. However, the fact that Arroyo's treating psychiatrist did not opine as to whether Arroyo was totally disabled by his mental illness in one statement is not in any way inconsistent with his later statement that Arroyo was just as impaired in May 1987 as he was in May 1992. It was the agency, not the treating psychiatrist, who determined that Arroyo was disabled in May 1992. In light of the fact that the only medical and other testimony presented indicates that Arroyo was just as disabled in 1987 as he was in 1992, it is the agency's position that Arroyo was not disabled in May 1987 that is contradictory. The opinion of a treating physician is generally given "controlling weight" if it is well supported by acceptable diagnostic techniques and "not inconsistent with other substantial evidence" in the record. *See Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993).( ). There is no suggestion that the diagnostic methods used to identify the onset of Arroyo's illness were unacceptable. The psychiatrist apparently considered Arroyo's medical, social and work history, which suggest a sudden and profound change in mental state and behavior after his job loss in 1987.

The Commissioner contends that the appointment of an independent expert is appropriate. However, SSA's own consulting psychiatrist has already stated that Arroyo's "persistent" psychological problems began in 1987. The agency has already had ample opportunity to appoint a medical expert. Its failure to do so in the proceedings below warrants entry of judgment on the pleadings. *See Carroll v. Secretary of Health & Human Services,* 705 F.2d 638, 644 (2d Cir.1983) (awarding benefits rather than remanding, where "nothing appears to have prevented the ALJ ... from offering other evidence, such as the testimony of vocational experts"); *Rivera v. Sullivan,* 923 F.2d 964, 970 (2d Cir.1991) ("Given ... the failure of HHS to present any evidence to suggest that Rivera possesses other skills ... and the length of time this litigation has already consumed, reversal and the immediate award of benefits is appropriate"). Since there are no significant conflicts on the record below for an

independent medical expert to evaluate, the Commissioner's decision will be reversed and judgment entered in Arroyo's favor. The case will be remanded for the calculation and payment of benefits from May 1987 to January 17, 1992.

## Conclusion

For the foregoing reasons, Arroyo's motion is hereby granted. The Commissioner's motion is denied. The case will be remanded to the SSA to calculate benefits due to Arroyo for the period May 1987 to January 17, 1992.

It is so ordered.