Gary **MARTINEZ,** Plaintiff,

v.

Joanne B. **BARNHART,** Commissioner of Social Security, Defendant.

No. 02–CV–6360L.

United States District Court, W.D. New York.

May 21, 2003.

William J. McDonald, Jr., Bond and McDonald, Geneva, NY, for plaintiff.

Brian M. McCarthy, AUSA, U.S. Atty., Rochester, NY, for defendant.

### DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

The plaintiff, Gary Martinez, seeks review pursuant to 42 U.S.C. § 405(g) of the final determination of the Commissioner of Social Security denying his claim for Social Security Disability benefits pursuant to Title II of the Social Security Act. Currently pending before the Court are plaintiff's motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings to reverse the decision of the Administrative Law Judge ("ALJ") and to remand the case solely for the calculation of benefits, and the Commissioner's cross-motion to remand the case for further administrative proceedings.

For the reasons set forth below, plaintiff's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded solely for the calculation and payment of benefits.

### BACKGROUND

Plaintiff was born on April 22, 1951. T.40.[1] He has a high school education and completed three years of college. He is also a veteran of the Vietnam War. T. 161. His past relevant work experience includes that as a truck driver, paramedic, and emergency room technician. T. 126. Plaintiff stopped working in December 1996 at the age of 45 and has not worked since. Plaintiff's period of insured status expired one year later on December 31, 1997.

On April 22, 1999, plaintiff applied for Social Security Disability ("SSD") and Supplemental Security Income ("SSI ") benefits. He alleged total disability due to post traumatic stress disorder ("PTSD") related to his combat experience in Vietnam.[2] His applications were denied initially and on reconsideration. Plaintiff requested a hearing before an ALJ, which took place on June 13, 2000. Plaintiff was represented at the hearing by a paralegal.

### A. The Administrative Hearing and Evidence of Plaintiff's Disability

At the hearing, plaintiff testified that he became disabled after he stopped working as a truck driver in December 1996. At that time, he began experiencing more severe symptoms of PTSD, including flashbacks, increased anxiety, and suicidal ideation. He testified that being unemployed only exacerbated the symptoms. T. 58. He could not remember precisely when he first received treatment for his psychiatric problems, but believed that it was sometime late in 1997. T. 57.

### B. Plaintiff's Medical Records

Plaintiff's medical records indicate that he first received treatment for his psychological problems in August 1998 at the VA Hospital in Bath, New York. T. 245. At that time, plaintiff's primary care physician diagnosed him with an anxiety disorder and ordered a psychiatric consultation. T. 245. Since then, plaintiff has been in continuous treatment and has been diagnosed with PTSD, chronic depressive disorder and mixed personality disorder with passive aggressive, avoidant and schizoid features. T. 188, 189, 216, 217. In addition, he has undergone psychological testing, hypnotic and group therapy, and is on

---

1. "T. __" refers to the page of the administrative record filed by the Commissioner with her Answer.

2. Plaintiff also alleged certain physical disabilities that are not at issue here.

prescription medication to treat his psychological disorders. From 1998 through the date of the hearing in 2000, he had regular appointments with his primary care physician, Dr. Veeraswamy Harinarrayanan, his treating psychiatrist, Rodolfo Ongjoco, his treating psychologist, Norm Quirion, a treating VA staff psychologist Craig Christensen, and his treating social worker and counselor, Lauren C. May–Jones. T. 175–202, 245–267.

Treatment records from these various sources indicate that plaintiff suffers from flashbacks related to his combat service in Vietnam, depression, insomnia, anxiety, nervousness, suspiciousness of others, loss of concentration, irritability, and suicidal ideation. Plaintiff also has isolated himself for days at a time by living in the woods in camouflaged clothing and arming himself with a bow and arrow and a shotgun. He lives alone, is uncomfortable around others, and suffers from intrusive thoughts that prevent him from concentrating on what he is doing at any particular time. *Id.*

In a November 18, 1999 residual functional capacity assessment, plaintiff's treating psychologist Dr. Quirion found that plaintiff was markedly limited in seven areas of work activity and extremely limited in three areas, including the ability to remember detailed instruction, to work a normal eight-hour workday without psychologically based distractions, and to tolerate customary work pressures. Dr. Quirion found that plaintiff did not retain a residual functional capacity to perform any work at all because of the severity of the PTSD symptoms. T. 220–226. In June 2000, plaintiff's treating psychiatrist, Dr. Ongjoco, found that plaintiff remained withdrawn, reclusive, depressed, and "not capable of being gainfully employed." T. 304. Between January 1999 and January 2000, his score on the Global Assessment of Functioning scale was between 41 and

55, indicating moderate to severe symptoms. T. 249, 254.

Both Dr. Quirion and Dr. Ongjoco completed mental evaluations of plaintiff in support of his SSD application. T. 218, 313. In a November 18, 1999 evaluation, Dr. Quirion stated that, based on his examination of plaintiff and evaluation of plaintiff's history, his onset date of disability was December 1996. T. 218. In a July 10, 2000 evaluation, however, Dr. Ongjoco was unable to state the onset date of plaintiff's disability. T. 313.

## C. The ALJ's August 24, 2000 Decision

In determining whether plaintiff was entitled to receive disability benefits, the ALJ in this case began the required five-step inquiry. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999) (discussing the five-step process delineated in the relevant regulations); 20 C.F.R. §§ 404.1520; 416.920. The ALJ found at step one that plaintiff did not engage in substantial gainful activity on or after December 31, 1996. T. 15. At step 2, the ALJ found that plaintiff established the presence of medically determinable severe impairments, including PTSD and a personality disorder, as of April 22, 1999. T.16. At step 3, the ALJ found that PTSD met or equaled the medical criteria of listed impairment 12.06, anxiety related disorders, found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Lastly, the ALJ held that the presumptive disability arising due to satisfaction of the criteria of a listed impairment had not been rebutted. In so finding, the ALJ stated that "the entire record supports the presumption" that plaintiff was disabled. T. 17–18.

In his decision, the ALJ gave controlling weight to the medical opinions of plaintiff's treating physicians, including Dr. Quirion and Dr. Ongjoco. T. 18. The ALJ also found that plaintiff's allegations of total

disabling symptoms were credible under the criteria set forth in 20 C.F.R. § 416.929. Moreover, the ALJ gave "little probative weight" to the contradictory assessments made by the Administration's medical record review experts because he found that the "well documented opinions" of plaintiff's treating psychologist and psychiatrists were "more reliable." *Id.* As a result of finding that plaintiff was disabled as of April 22, 1999, the date of his application for benefits, he was entitled to receive SSI benefits.

However, the ALJ came to a different conclusion regarding plaintiff's application for SSD benefits. At step 2 of the sequential evaluation, the ALJ held that plaintiff did not provide sufficient medical evidence that he had a severe impairment on or before his insured status expired on December 31, 1997. Specifically, the ALJ found that:

> Although the claimant alleges that his disability began in December 1996, there is no evidence of record to confirm this allegation, only historical accounts made by the claimant as he related his health history to his medical advisors. There are no records of medical treatment of the claimant in evidence regarding the period December 31, 1996 through December 31, 1997. The claimant testified that his medical records had been destroyed in a fire and no longer were available; however, he recalled that he had first seen a doctor for post traumatic stress disorder late in 1997, but he was not sure of the date.

> It is the claimant who has the burden of establishing the presence of medically determinable impairments upon which disability may be based. Unfortunately, the presence of impairments cannot be established by recollection of a claimant, but must be based on competent medical evidence. This record is insufficient to establish the presence of any medically determinable impairment prior to January 1, 1998.

T. 16. As a result, plaintiff was not entitled to receive SSD benefits because he had not shown that he was disabled prior to the expiration of his insured status on December 31, 1997. *See* 42 U.S.C. § 423(c)(1).[3] It is with this portion of the ALJ's decision that both parties take issue.

As a practical matter, had the ALJ found that plaintiff was disabled prior to his last date insured, he would have been entitled to twice the amount of benefit payments he currently receives for SSI alone. In addition, plaintiff would have been entitled to retroactive SSD benefits for the one-year period preceding the date of his application. *See* 20 C.F.R. § 404.315(a)(4).

## D. Evidence Before the Appeals Council

Plaintiff requested a review by the Appeals Council. T. 8–10, 315–330. In support of that application, plaintiff submitted his own affidavit and the affidavits of two friends, Roger DeWolfe and Stanton Hanna. In his affidavit, plaintiff stated that he had suffered "for many years" from symptoms of PTSD. However, he did not seek treatment before 1998 because he was unable to admit to himself that he suffered from a mental illness. T. 327. He claimed, as he did at the hearing, that his symptoms were significantly aggravated when he lost his job in December 1996. *Id.*

---

**3.** To be eligible for Social Security Disability benefits, plaintiff must show that he worked for at least 20 of the 40 calendar quarters preceding the onset of disability. *See* 42 U.S.C. § 423(c)(1). Here, December 31, 1997 was the last date on which plaintiff satisfied this requirement. T. 101–103.

Mr. Hanna, who has known plaintiff since he was fourteen years old, swore in his affidavit that plaintiff experienced a "severe decline" in his behavior since he lost his job in 1996. He observed that plaintiff became socially isolated and very reluctant to trust people. He also believed that plaintiff had, at times, "lost his will to live." In addition, Hanna stated that, although plaintiff suffered from symptoms for some time, he did not seek treatment for his mental illness because he was in denial. T. 329–30. Likewise, Mr. De-Wolfe claimed that after early December of 1997, plaintiff became more depressed, nervous, and forgetful. He also indicated that plaintiff could no longer make decisions, handle stress, or remember or carry out instructions very well. DeWolfe believed that plaintiff's thinking became more erratic, as evidenced by the fact that plaintiff disappears into the woods for periods of time to get away from people. T. 323–26.

The Appeals Council considered the additional evidence, but found that such evidence did not warrant a review of the ALJ's decision. T. 3–4. Therefore, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

The only issue before the Court concerns the ALJ's determination that plaintiff was ineligible to receive SSD benefits. Both plaintiff and the Commissioner agree that the ALJ committed an error of law in his analysis of whether plaintiff was disabled prior to the expiration of his insured status. Further, both parties agree that the case should be remanded. However, plaintiff requests that the Court remand solely for the calculation and payment of benefits. The Commissioner seeks to remand the case for further administrative proceedings. I agree with the plaintiff that the record supports a remand for payment of benefits.

## A. The ALJ's Errors of Law

The ALJ made two errors of law in denying plaintiff's application for SSD benefits. Both concern the manner in which the ALJ determined the onset date of plaintiff's disability. First, the ALJ failed to comply with Social Security Ruling 83–20 in determining plaintiff's onset date of disability. Second, the ALJ failed to give controlling weight to the opinion of Dr. Quirion that plaintiff's onset date of disability was December 1996.

### 1. Social Security Ruling 83–20

Plaintiff has conceded that he did not seek medical treatment for his disability prior to December 1997. Therefore, no medical records exist for the time period between plaintiff's alleged onset date of disability, December 1996, and the date his insured status expired on December 31, 1997. As a result, plaintiff cannot produce any contemporaneous clinical findings that he suffered from PTSD during this time period.

However, the absence of contemporaneous medical records does not preclude a claimant from otherwise demonstrating that he was disabled prior to the expiration of his insured status. Social Security Ruling 83–20, which is binding on the Commissioner, *see Heckler v. Edwards,* 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984), provides instruction regarding how to determine the onset date of particular disabilities. *See* Titles II and XVI: Onset of Disability, 1983 SSR 83–20, 1983–1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249 (S.S.A.).

In a case like this that involves a disability without a sudden or traumatic origin, SSR 83–20 states that the Commissioner should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Specifically, "[t]he starting

point in determining the date of onset of disability is the individual's statement as to when disability began." *Id.* In addition, "[t]he day the impairment caused the individual to stop work is frequently of great significance . . . ." *Id.* Although SSR 83–20 recognizes that "medical evidence serves as the primary element in the onset determination," it also acknowledges that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id.*

■ Where contemporaneous medical evidence is not available, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.*

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition . . . . The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.

The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

*Id.* Finally, SSR 83–20 states that "[t]he date alleged by the individual should be used if it is consistent with all the evidence available." *Id.*

■ In light of the mandate of SSR 83–20, the ALJ erred in summarily concluding that plaintiff's own allegations regarding his symptoms and onset date were insufficient to support a finding of disability. The ALJ was required to review those allegations, along with plaintiff's work history and the entire medical record, to derive at a reasoned disability onset date. Instead, the ALJ concluded that the record was devoid of "competent medical evidence" that plaintiff was disabled prior to December 1997, and arbitrarily selected April 22, 1999, the date he applied for SSI benefits, as the onset date of his mental disability. T. 16. That determination was incorrect. *See Arroyo v. Callahan,* 973 F.Supp. 397, 399 (S.D.N.Y.1997) ("ALJ may not assume that a claimant developed a mental disorder on the date of SSA's

consultative psychiatric examination, absent evidence to support such a conclusion"); *see also Bell v. Sec'y of Health & Human Servs.*, 732 F.2d 308, 311 (2d Cir. 1984) (ALJ erred by assuming that claimant "suddenly became schizophrenic on the day of her hearing, absent some evidence to support such a view.").

Importantly, the ALJ should have appointed a medical advisor to assist him in selecting an appropriate onset date that could be inferred from the record as a whole. *See* SSR 83–20; *Walton v. Halter*, 243 F.3d 703 (3d Cir.2001) (ALJ erred in not calling medical advisor to infer onset date of psychiatric disability in the absence of contemporaneous medical records); *Bailey v. Chater*, 68 F.3d 75 (4th Cir.1995) (same). Further, in the absence of medical evidence, the ALJ should have solicited other evidence from plaintiff's family, friends or other lay witnesses regarding plaintiff's condition during the relevant time period. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record ...."); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) (a hearing on disability benefits is a non-adversarial proceeding in which the ALJ has an affirmative obligation to develop the administrative record). In short, the ALJ's summary denial of plaintiff's application for SSD benefits without any of the analysis called for by SSR 83–20 requires that the ALJ's decision be reversed.

### 2. Dr. Quirion's Opinion of Onset Date

█ The ALJ also erred by implicitly rejecting the retrospective opinion of plaintiff's treating psychologist, Dr. Quirion, regarding the onset of plaintiff's PTSD. Dr. Quirion gave his opinion that plaintiff's disability began in December 1996. T. 218. The ALJ made no mention of Dr. Quirion's onset opinion in his decision, and the Commissioner herself concedes that the omission constitutes reversible error. *See* Dkt. # 4 at 3–7. The law is well-settled that the ALJ was required to give "good reasons" for why he did not accord controlling weight to a treating physician's opinion. *Shaw*, 221 F.3d at 134; 20 C.F.R. § 1527(d)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The failure to state the reasoning is grounds for reversal. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998). Here, the error is particularly troubling because the ALJ accorded controlling weight to the remainder of Dr. Quirion's opinion. T. 18.

Seemingly, the ALJ rejected Dr. Quirion's opinion because it was based, in part, on plaintiff's statements to Dr. Quirion regarding his symptoms and psychological history. The ALJ stated in his decision that "there is no evidence of record" that plaintiff's disability began in December 1996, "only historical accounts made by the claimant as he related his health history to his medical advisors." T. 16. The ALJ, however, could not reject Dr. Quirion's opinion on that basis alone. *See Schaal*, 134 F.3d at 505.

█ A treating physician's retrospective opinion may be probative when based upon clinically acceptable diagnostic techniques and not contradicted by the other medical evidence. *Perez v. Chater*, 77 F.3d at 48. As the Third Circuit held in *Walton*, 243 F.3d at 710, the ALJ

> could not have rejected the opinion of Dr. Gibbon, a treating physician, solely on the basis that his opinion was based on information supplied by Walton and not on personal observation of Walton during the relevant period. As SSR 83–

20 clearly reflects, a conclusion regarding onset in a situation of this kind can, and frequently must, be based on information gathered after the fact from the claimant and, indeed, from other lay people like family and neighbors. The basis for a medical opinion is, of course, an indispensable element of a reasoned evaluation of it, and there are, of course, situations in which an opinion based on personal observation may be favored over one based on information supplied by the claimant. But this is a situation in which an opinion based on personal, contemporaneous observation was not available. In such a situation, SSR 83–20 calls for an ALJ to have the benefit of expert medical advice based on the best available data without regard to its source.

A similar conclusion was reached in *Agnese v. Chater,* 934 F.Supp. 59, 63 (E.D.N.Y.1996). In *Agnese,* plaintiff offered only the retrospective diagnosis of her treating physician that she suffered from a psychological disability fifteen years before the date he first treated her. No contemporaneous medical evidence was available from that time period, only plaintiff's own testimony regarding her symptoms. Relying on SSR 83–20 and the weight normally accorded a treating physician's opinion, *see* 20 C.F.R. § 404.1527(d)(2), the District Court reversed the Commissioner's determination that plaintiff was not disabled. In so holding, the Court found that the physician's conclusion was "medically acceptable" and consistent with lay testimony in the record from plaintiff's husband and her neighbor. *Agnese,* 934 F.Supp. at 63. Further, the Commissioner had not offered any evidence to contradict her treating physician's diagnosis. Therefore, the Court held that the plaintiff was disabled as a matter of law prior to her last date insured. However, because the ALJ had not considered steps three, four, or five of the sequential evaluation, the Court remanded the case for further administrative proceedings.

Likewise in *Arroyo v. Callahan,* 973 F.Supp. 397 (S.D.N.Y.1997), the District Court reversed the determination of the Commissioner that plaintiff was not disabled during a time period when no contemporaneous medical evidence was available. Plaintiff relied on the retrospective diagnosis of his treating physician and the opinion of his treating social worker that he suffered from a psychological disability in 1987. Plaintiff had not sought treatment for that disability until 1991. The treating source opinions were buttressed by testimony from plaintiff, his wife, and a life long friend regarding plaintiff's symptoms between 1987 and 1992. The Court in *Arroyo,* also relying on SSR 83–20 and the treating physician rule, found that there was "no suggestion that the diagnostic methods used to identify the onset of [plaintiff's] illness were unacceptable. The psychiatrist apparently considered Arroyo's medical, social and work history, which suggest a sudden and profound change in mental state and behavior after his job loss in 1987." *Id.* at 400.

Similarly here, the ALJ failed to give plaintiff's treating psychologist's opinion regarding onset of disability the proper weight. Dr. Quirion's opinion was based on his examination and evaluation of plaintiff over the course of two years. It was improper for the ALJ to reject that opinion without any explanation and find that plaintiff had not presented sufficient evidence of his disability before 1998. *Schaal,* 134 F.3d at 505 ("The lack of clinical findings complained of by the ALJ did not justify the failure to assign at least some weight" to the treating physician's opinion); *see also Shaw,* 221 F.3d at 133 ("Just because plaintiff's disability went untreated does not mean he was not disabled.")

## B. Remedy

The only task left for the Court is to determine the appropriate remedy. Plaintiff seeks a remand solely for the calculation of benefits. The Commissioner argues that further administrative proceedings are appropriate and that the ALJ should reconsider Dr. Quirion's opinion regarding onset of disability and determine whether it is based on acceptable diagnostic techniques.

 Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980). Here, I find that further administrative proceedings are unnecessary because application of the proper legal standard to the administrative record before this Court leads only to the conclusion that plaintiff was disabled as of December 1996. *See Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (remand for further administrative proceedings is unnecessary where application of correct legal standard could lead to only one conclusion); *see also Shaw,* 221 F.3d at 135.

The ALJ already found that plaintiff was disabled as of April 22, 1999. He further found that plaintiff's allegations regarding his symptoms were credible and that the opinions of his treating physicians were "well documented," and "more reliable" than the consulting physician's opinions, and, therefore, entitled to "controlling weight." T. 17–18. Moreover, the ALJ held in connection with step five of the sequential evaluation that the Commissioner failed to rebut the presumption of a finding of disability, and that "the entire record supports the presumption." T. 17.

Furthermore, the Court has the benefit of contemporaneous witness testimony. The affidavits of Mr. Hanna and Mr. De-Wolfe, which are now part of the adminis-trative record before this Court, *see Perez,* 77 F.3d at 45, lend further support to the opinion of Dr. Quirion that plaintiff was totally disabled as of December 1996. Mr. DeWolfe and Mr. Hanna stated in their affidavits that plaintiff suffered for many years from symptoms of PTSD, and that those symptoms were aggravated after he lost his job in December 1996. Additionally, there is no contradictory medical evidence in the record that plaintiff was not disabled between December 1996 and December 1997. Based on the entire administrative record, the Court finds that plaintiff was disabled as of December 1996, and is entitled to retroactive SSD benefits. Such a finding is also consistent with the mandates of SSR 83–20, which provides that "[t]he date [of onset] alleged by the individual should be used if it is consistent with all the evidence available." SSR 83–20.

Finally, while SSR 83–20 indicates that the ALJ should have appointed a medical advisor to assist with an onset determination or otherwise develop the record more thoroughly, that is not necessary at this stage. The record is consistent that plaintiff was disabled since December 1996. Further, there are no other medical records available to supplement the administrative record. Therefore, further administrative proceedings would serve no purpose. *See Arroyo,* 973 F.Supp. at 400; *see also Rivera v. Sullivan,* 923 F.2d 964, 969–70 (2d Cir.1991) (reversal and the immediate award of benefits appropriate in light of retrospective diagnosis of treating physician that plaintiff was disabled, the Commissioner's failure to present any contradictory evidence, and the length of time the litigation had already consumed); *Parker,* 626 F.2d at 235.

The Court in *Arroyo* rejected the Commissioner's suggestion that the case be remanded so that a medical advisor could

be appointed in accordance with SSR 83–20 to establish an onset date. Instead, the Court remanded the case solely for the calculation of benefits, finding that the Commissioner had already had ample opportunity to develop the record, and that at least one of its consulting psychiatrists had stated that plaintiff's problems began in 1987. Therefore, since there were no "significant conflicts" in the record, the Court held that there was no purpose in appointing a medical advisor. I find this reasoning persuasive here. *See also Shaw,* 221 F.3d at 135 (remand for further administrative proceedings, including step five analysis, was unnecessary because the record contained overwhelming evidence that the plaintiff suffered from a listed impairment rendering him disabled for purposes of SSD benefits, including the opinion of a treating physician that was improperly rejected by the ALJ).

### CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt.# 3) is granted. The final decision of the Commissioner is reversed in part, and the case is remanded for calculation and payment of Social Security Disability benefits. The Commissioner's motion to remand for further administrative proceedings (Dkt.# 4) is denied.

IT IS SO ORDERED.