**Marc LESTERHUIS, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 12–CV–6626 EAW.**

United States District Court, W.D. New York.

Signed Aug. 11, 2014.

William J. McDonald, Jr., Bond and McDonald, Geneva, NY, for Plaintiff.

Andreea Laura Lechleitner, Social Security Administration, New York, NY, Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, Mary C. Kane, U.S. Attorney's Office, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### I. INTRODUCTION

Plaintiff Marc Lesterhuis ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for disability insurance benefits. (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Michael W. Devlin was not supported by substantial evidence in the record and was based on erroneous legal standards. Plaintiff further claims that the Appeals Council

failed to consider new and material evidence.

Presently before the Court are the parties' opposing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 5, 6). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings (Dkt. 6), is granted, and Plaintiff's motion (Dkt. 5) is denied. Plaintiff's complaint is dismissed with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Overview

On February 19, 2009, Plaintiff protectively filed an application for disability insurance benefits. (Administrative Transcript (hereinafter "Tr.") 75, 128–34). In his application, Plaintiff alleged a disability onset date of My 12, 2008. (Tr. 128). Plaintiff alleged the following disabilities: lower back injury and nerve damage, lumbar degenerative disc disease, and high blood pressure. (Tr. 159). On May 15, 2009, the Commissioner denied Plaintiff's application. (Tr. 79). Plaintiff timely filed a request for a hearing before an Administrative Law Judge. (Tr. 82).

On August 24, 2010, Plaintiff, represented by counsel, testified at a hearing before ALJ Devlin. (Tr. 52–73). Vocational Expert ("VE") Dr. Peter Mantee, also appeared and testified. (Tr. 54). On September 23, 2010, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 33–46).

On September 12, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–5). On November 9, 2012, at Plaintiff's request, the Appeals Council gave Plaintiff an extension of time to file a civil action appealing the Commissioner's determination of no disability. (Tr. 1–2). On November 15, 2012, Plaintiff filed this civil action appealing the final decision of the Commissioner. (Dkt. 1).

### B. The Non–Medical Evidence

At the time of the hearing, Plaintiff was a 42 year old male educated through the eleventh grade. (Tr. 45). Plaintiff had worked as a truck driver since 1986, and had stopped working on July 12, 2008, due to his alleged back impairments. (Tr. 160).

#### 1. Plaintiff's Testimony

Plaintiff testified that he had injured his back when he fell at work on June 9, 2008. (Tr. 56). He stopped working on July 12, 2008, due to the injury. (Tr. 57). Plaintiff stated that he resumed working for three weeks in September 2008, but was forced to stop working because of his back pain. (Tr. 57, 59). Plaintiff reported that he had back surgery in July 2009, but that his condition only worsened. (Tr. 60).

Plaintiff testified that he could stand for one half hour, walk for one half mile, sit for 45 minutes to one hour, and lift five to ten pounds. (Tr. 62–64).

Plaintiff testified to experiencing numbness in his left leg that would cause him to favor his right side. (Tr. 63). He stated that he took Percocet and ibuprofen to manage the pain. (Tr. 64).

Plaintiff also reported that he was depressed, had trouble concentrating, and was seeing a therapist. (Tr. 65–66). He could no longer hunt or ride motorcycles; things he used to enjoy doing. (Tr. 60).

## 2. Vocational Expert's Testimony

At the hearing, the ALJ presented VE Mantee with a hypothetical question. (Tr. 67–72). The VE was asked to consider someone of Plaintiff's age, education, and experience who could:

occasionally lift and/or carry 10 pounds, never frequently lift and/or carry, less than occasionally lift overhead, stand or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, occasionally push and/or pull up to 10 pounds, never frequently push and/or pull, be allowed to alternate between sitting and standing every 30 minutes, less than occasionally climb ramps and/or stairs, stoop, kneel, crouch, and crawl, occasionally balance, never climb ladders, ropes, or scaffolds, never repetitively bend, stoop, or reach . . . all directions, including overhead . . . mentally be able to understand, remember, and carry out simple instructions and tasks, interact appropriately with co-workers and supervisors on a consistent basis, work in proximity to but not in conjunction with coworkers, less than occasional contact with the general public, less than occasional contact with the general public, and able to sustain sufficient concentration and focus to maintain regular and continued employment.

(Tr. 68–69).

The VE testified that a hypothetical individual with these abilities and restrictions would be able to perform occupations that existed in significant numbers in the national economy, including call-out operator and surveillance system monitor. (Tr. 70).

Plaintiff's attorney asked the VE if there would be any jobs for the hypothetical individual to perform if that individual were to be absent four days out of the month. (Tr. 71). The VE stated that there would be no available jobs with that additional limitation. (Id.).

## C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

### 1. Medical Evidence Presented to the ALJ

On July 22, 2008, Plaintiff went to the emergency room of F.F. Thompson Hospital for treatment related to a fall at work the prior month. (Tr. 229–31, 233–40). Kristine Tenebruso, M.D., examined Plaintiff and found reduced range of motion of his back, but no muscle spasm, vertebral point tenderness, or soft tissue tenderness. (Tr. 229–30). An x-ray revealed an osteophyte at the L5 disc space and "minimal to mild" degenerative disc disease, but no fracture. (Tr. 230–31). Dr. Tenebruso diagnosed lumbar strain, prescribed Plaintiff with Darvocet and ibuprofen, and advised Plaintiff to limit lifting and strenuous activity. (Tr. 230).

On July 29, 2008, Plaintiff's primary care physician, Dr. Timothy Ryan, ordered a magnetic resonance imaging ("MRI") of Plaintiffs lumbar spine. (Tr. 242). The MRI revealed a small to moderate disc extrusion at the L5–S1 disc space that compressed on the dural sac and the S1 nerve root; mild central stenosis at the L4–L5 disc space secondary to degenerative disc disease; and a small central disc extrusion/bony spur complex. (Tr. 242–43).

On September 16, 2008, Plaintiff saw Glenn Rechtine, M.D., for his back pain. (T. 255–56). Dr. Rechtine found no weakness or instability of the lumbar spine, and he found that plaintiff's motor strength was full with reflexes and sensation unremarkable. (Tr. 256). Dr. Rechtine diagnosed Plaintiff with spinal stenosis in the

lumbar region and opined that Plaintiff could do light work full time. (Tr. 257). The doctor further opined that Plaintiff could lift up to ten pounds frequently; stand and walk occasionally; bend, squat, and do overhead activities occasionally; and use arm and leg controls occasionally. (*Id.*). On December 9, 2008, Dr. Rechtine reasserted this opinion. (Tr. 276).

Plaintiff received seventeen physical therapy treatments between September and December 2008. (Tr. 287–98).

On October 2, 2008, Richard M. Byrne, M.D., an independent medical examiner, examined Plaintiff in connection with his Workers' Compensation case. (Tr. 358–62). Plaintiff reported that he was able to drive and do basic activities of daily living. (Tr. 359). Plaintiff further informed Dr. Byrne that he did not perform housecleaning, but would go shopping if he was assisted. (*Id.*). Dr. Byrne found positive straight leg raising, diminished sensation, and reduced range of motion of the spine, but also found full motor strength and normal reflexes. (Tr. 360). Dr. Byrne reviewed Plaintiff's medical records and determined that Plaintiff could not return to his regular work but that he could perform sedentary work with limited standing and walking. (Tr. 361). Dr. Byrne further opined that Plaintiff should avoid repetitive bending, stooping, and reaching, but could occasionally lift, push, or pull up to 15 pounds. (*Id.*).

At an October 28, 2008 follow-up with Dr. Rechtine, Plaintiff stated that his pain had not improved, he did not tolerate light duty, and that he wanted to try epidural injections. (Tr. 283–85).

In November 2008, an epidural injection was performed and another was attempted unsuccessfully. (Tr. 259, 266).

Dr. Byrne examined Plaintiff again on January 27, 2009, and opined that Plaintiff could do sedentary work with the ability to change positions frequently, limit walking, and occasionally push, pull, or lift five to ten pounds. However, Dr. Byrne recommended that Plaintiff do no repetitive stooping, bending, or reaching, and not climb. (Tr. 367). At a follow-up examination on May 7, 2009, Dr. Byrne repeated this assessment. (Tr. 374).

On January 13, 2009, Plaintiff visited M. Gordon Whitbeck, M.D., an orthopaedic surgeon, to determine if surgery was an option. (Tr. 303–05). Plaintiff reported that after physical therapy and two epidural injections his pain had not improved. (Tr. 303). Dr. Whitbeck found that although Plaintiff's motor strength was full and his sensation was intact, Plaintiff's straight leg raising was positive. (Tr. 304). Dr. Whitbeck ordered a myelogram and computed tomography ("CT") scan to examine whether surgery was warranted and indicated that Plaintiff was temporarily totally disabled. (Tr. 305).

Plaintiff's lumbar myelogram indicated a ventral impression with lateral recess encroachment and nerve root compression at the L4–L5 disc space and lesser encroachment at the L5–S1 disc space. (Tr. 318). The CT revealed degenerative changes at the L4–L5 and L5–S1 discs, with osteophyte complexes causing foraminal encroachment, and a disc bulge at the L3–L4 disc space. (Tr. 319).

Dr. Byrne re-examined Plaintiff on January 27, 2009, and opined that Plaintiff was unable to return to work, but that he could be employed full time in a light duty capacity doing sedentary activities with some limitations. (Tr. 367).

On March 18, 2009, Frank E. Williams, LCSW–R, evaluated Plaintiff related to complaints of depression. (Tr. 347). Plaintiff reported no suicidal or homicidal ideations. (Tr. 348). Therapist Williams noted that Plaintiff's mood was depressed,

but that his thought process was logical and sequential. (*Id.*). He recommended Plaintiff to psychotherapy to determine whether medication was warranted. (*Id.*). In subsequent visits with Therapist Williams, Plaintiff reported improvement in his symptoms. (Tr. 350).

On April 7, 2009, Plaintiff was examined by George A. Sirotenko, D.O., at the request of the Commissioner. (Tr. 333–35). Plaintiff reported that he was able to bathe and dress himself, but needed assistance putting on his shoes. (Tr. 333). He stated that he did some light cooking. (Tr. 334). Dr. Sirotenko observed that Plaintiff had reduced range of motion of the spine and diminished sensation, but full motor strength. (Tr. 335). Dr. Sirotenko opined that Plaintiff had a moderate limitation for prolonged standing, walking, and climbing stairs, inclines, or ladders. (Tr. 336). The doctor advised Plaintiff to avoid overhead lifting and lumbar spine flexion, extension, or rotation. (*Id.*).

Dr. S. Putcha, a state agency medical consultant, reviewed Plaintiff's medical records on April 29, 2009, and opined that Plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds, stand at least two hours in an eight hour workday, and push and pull without limitation. (Tr. 339). Dr. Putcha further opined that Plaintiff could perform all postural activities occasionally. (Tr. 340).

On May 5, 2009, Maryanne G. Hamilton, Ph.D., examined Plaintiff relating to complaints of anxiety and depression. (Tr. 351). After examination, Dr. Hamilton concluded that Plaintiff was mildly impaired in relating adequately with others and moderately impaired in dealing with stress. (Tr. 353).

On May 13, 2009, state agency psychologist Dr. E. Kamin reviewed Plaintiff's medical records related to his mental impairments and opined that Plaintiff was able to perform simple work related tasks that did not entail working closely with others. (Tr. 393). Dr. Kamin opined that Plaintiff was moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them, and in his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 391–92).

On July 30, 2009, Dr. Whitbeck performed a lumbar-decompression surgery on Plaintiff. (Tr. 414–15). Post-surgical treatment included physical therapy, prescription pain medications, and use of a TENS unit. (Tr. 429). At a post-surgery follow-up on September 9, 2009, Dr. Whitbeck stated that Plaintiff was temporarily totally disabled, but indicated that Plaintiff could lift five to ten pounds, but should avoid extreme range of motion of the spine. (Tr. 416). Dr. Whitbeck encouraged Plaintiff to walk as much as he could on a regular basis. (*Id.*). Over the subsequent months, Dr. Whitbeck determined that Plaintiff was temporarily totally disabled. (Tr. 417–18, 428, 430, 432, 434, 441).

Between March and May 2010, Plaintiff completed an additional 25 physical therapy treatments. (Tr. 432).

On May 26, 2010, Dr. Byrne examined Plaintiff and opined that Plaintiff could perform full time light duty work and lift up to ten pounds, but should avoid climbing and repetitive bending, stooping, and reaching. (Tr. 448).

On July 17, 2010, Therapist Williams opined that Plaintiff had a "good" ability to comprehend and carry out instructions, abide by occupational rules, make simple work related decisions, and be aware of normal hazards. (Tr. 461–63). Therapist Williams opined that Plaintiff had a "fair" ability in all other areas. (Tr. 461–63). This means that Plaintiff's functions in these areas was seriously limited and

would likely result in periods of unsatisfactory performance at unpredictable times. (Tr. 461–63). Therapist Williams opined that Plaintiff would likely be absent from work as a result of his impairments or for treatment more than four days per month. (Tr. 461–63). Plaintiff was not on antidepressants due to the cost of medications and medical evaluations. (Tr. 464).

On August 9, 2010, Plaintiff treated with Donovan Holder, M.D., a pain management specialist. (Tr. 466–67). Dr. Holder noted that a straight leg raising test was negative, lumbar spine palpation was unremarkable, and there was no tenderness at the scar site. (Tr. 466–67). There was diminished sensation in the left leg. (Tr. 467). Dr. Holder diagnosed postlaminectomy syndrome, hypertension, and possible anxiety disorder. (Tr. 466–67). Dr. Holder recommended nerve block injections and opined that Plaintiff had a temporary impairment. (Tr. 467).

### 2. Medical Evidence Submitted to the Appeals Council

Plaintiff submitted additional records to the Appeals Council for the first time for review. One record was a March 2, 2011, RFC evaluation from Dr. Holder. (Tr. 481). In his statement, Dr. Holder opined that, in an eight hour workday, Plaintiff could sit for six hours, stand for one hour, and walk for one hour. (Id.). He further opined that Plaintiff could lift up to ten pounds, but could lift less than ten pounds for two to three hours or three to six hours. (Id.). Dr. Holder stated that Plaintiff should not work more than four hours per day, and that "per patient history" Plaintiff's limitation existed as of June 2008. (Tr. 482).

### D. Determining Disability Under the Social Security Act and the ALJ's Decision

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see Rembert v. Colvin, No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. See Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask

whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

Here, in applying the five-step sequential evaluation, ALJ Devlin made the following determinations. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 12, 2008, the date of his application. (Tr. 38). The ALJ noted the three weeks in September 2008 that Plaintiff returned to work, but deemed this time to be an unsuccessful work attempt. (*Id.*). At the second step, the ALJ found that Plaintiff has the following severe impairments: chronic low back pain; discogenic disease with features of L5–S1 left lower extremity radiculopathy; status post laminectomy; anxiety disorder, NOS; and depressive disorder. (*Id.*). At the third step, the ALJ analyzed the medical evidence and found that Plaintiff did not have a listed impairment or combination of impairments that would render him disabled. (*Id.*). Ac-

cordingly, at the fourth step, the ALJ determined Plaintiff's residual functional capacity to perform work. (Tr. 40). The ALJ concluded that plaintiff had the following RFC:

[t]o perform sedentary work as defined in 20 CFR 416.967(a) with the following limitations: the claimant can occasionally lift and/or carry ten pounds; the claimant can never frequently lift and/or carry; the claimant can less than occasionally lift overhead; the claimant can stand and/or walk at least two hours in an eight hour workday; the claimant can sit about six hours in an eight hour workday; the claimant can occasionally push and/or pull up to ten pounds; the claimant [cannot] frequently push and/or pull; the claimant should be allowed to alternate between sitting and standing every thirty minutes; the claimant can less than occasionally climb ramps and/or stairs, stoop, kneel, crouch, and crawl; the claimant can occasionally balance; the claimant can never climb ladders/ropes/scaffolds; the claimant can never repetitively bend, stoop, or reach (all directions, including overhead); the claimant can only understand, remember, and carry out simple instructions and tasks; the claimant can interact appropriately with co-workers and supervisors on a consistent basis; the claimant can work in proximity to but not in conjunction with co-workers; the claimant can have less than occasional contact with the general public; the claimant can have less than occasional contact with the general public; and the claimant is able to sustain sufficient concentration and focus (i.e. two hours at a time) to maintain regular and continuing employment (i.e. *eight hours per day five days per week* or an equivalent schedule).

(*Id.*).

The ALJ then proceeded to the fifth step, which is comprised of two parts.

First, the ALJ assessed Plaintiff's job qualifications by considering his physical ability, age, and education. (Tr. 45). At the time the application was filed, Plaintiff was 40 years old, he had a limited education, and despite a good work history, he could not perform his past work. (*Id.*). Second, the ALJ determined whether there were jobs existing in the national economy that a person with Plaintiff's qualifications and RFC could perform. (Tr. 45–46). ALJ Devlin found that Plaintiff's ability to perform the requirements of sedentary work were impeded by his physical and mental limitations, but, based on the VE's testimony, the ALJ found that Plaintiff was still able to work. (Tr. 46). Relying on the VE's testimony, the ALJ concluded that Plaintiff was able to perform the representative jobs of call-out operator or surveillance system monitor, as jobs existing in the national economy. (*Id.*).

## III. DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). Title 42 U.S.C. section 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo*). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

### B. The Appeals Council did not err in rejecting the additional evidence submitted by Plaintiff for review.

Plaintiff argues that the Appeals Council committed reversible error in failing to consider and evaluate the additional materials he submitted to the Council on ap-

peal. (Dkt. 5–7 at 9). In its decision, the Appeals Council issued the following boilerplate statement:

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 3–4).

### 1. Dr. Holder's RFC Evaluation

■ Plaintiff objects to the Appeals Council's rejection of Dr. Holder's March 2, 2011, RFC evaluation. (Dkt. 5–7 at 9). Pursuant to 20 C.F.R. § 404.970(b):

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Plaintiff argues that Dr. Holder's March 2011 evaluation is new and material evidence and that therefore the Appeals Council was required to consider it. (Dkt. 5–7 at 9). Plaintiff asserts that the evaluation is new because it was not included in the record at the time of the ALJ hearing, and he further contends that the evaluation is material because Dr. Holder "identified a number of limitations inconsistent with the ability to perform even sedentary work on a full time basis." (Dkt. 5–7 at 9). Plaintiff suggests that the evaluation relates to the relevant time period because Dr. Holder stated that the limitations he identified have been consistent and continuing since July 2008, despite the fact that the evaluation itself post-dates the ALJ's decision. (Dkt. 5–7 at 11).[1]

In forming this argument, Plaintiff cites to two cases which found that a physician's retrospective diagnosis may be afforded significant weight. In *Martinez v. Barnhart*, 262 F.Supp.2d 40 (W.D.N.Y.2003), the court accepted the retrospective diagnosis of the claimant's treating psychologist where no contemporaneous medical evidence was available. *Id.* at 47. In *Byam v. Barnhart*, 336 F.3d 172 (2d Cir. 2003), the Second Circuit considered a retrospective mental diagnosis as controlling to evaluate whether the claimant was "so severely disabled that she could not comprehend the administrative process" where that opinion was not contradicted by contemporaneous medical evidence, and where the physician had been treating the claimant during the relevant time period. *Id.* at 183. These cases are not instructive for Plaintiff's case.

■ It is true that "[a] treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996). However, if the physician treated the claimant after the retrospective time period, and the contemporaneous medical evidence does not support or even contradicts the physician's opinion, then

---

1. Plaintiff also argues that the Appeals Council was required to consider this new evidence, and then was required to apply the treating source regulations in accepting or rejecting the opinion. (Dkt. 5–7 at 12). The Court does not address this argument because the Appeals Council was not required to accept the new evidence.

that physician's opinion may not be probative. *See Reynolds v. Colvin,* 570 Fed. Appx. 45, 48–49 (2d Cir.2014); *see also Flanigan v. Colvin,* 21 F.Supp.3d 285, 304, No. 13 Civ. 4179(AJP), 2014 WL 1979927, at *15 (S.D.N.Y. May 15, 2014) ("[E]ven assuming *arguendo* that there was evidentiary support for Dr. Kovoor's retrospective onset statements—i.e. that Flanigan's 'complaints have been present since Nov 2008'... those statements substantiate only that the conditions or symptoms existed in 2008, but not necessarily that they were as severe and disabling in 2008 as they had become by the time Dr. Kovoor prepared the February 2012 letter.").

Here, Dr. Holder's opinion is dated March 2, 2011, almost 6 months after Plaintiff's August 24, 2010 ALJ hearing. Notably, Dr. Holder did not treat Plaintiff until August 9, 2010, just a matter of days before the ALJ hearing. In fact, many, portions of Dr. Holder's March 2011 opinion are contrary to the observations and opinions of Plaintiff's treating physicians Drs. Byrne, Rechtine, and Whitback, which were all made during the relevant time period. (Tr. 361, 255–56, 416).

In light of the above, the Appeals Council properly declined to disturb the ALJ's decision based upon Dr. Holder's March 2011 evaluation.

### 2. Additional Evidence

■ Plaintiff argues that the Appeals Council also failed to properly consider five additional items submitted for the Council's review by facsimile on July 11, 2011, and August 12, 2011. These items included the following: (1) Lifecare Medical Associates medical record dated 2/9/2011; (2) Rochester Brain & Spine medical records dated 3/15/2011 through 7/1/2011; (3) Highland Hospital medical records dated 6/6/2011 through 6/10/2011; (4) Highland Hospital operative report dat-

ed 6/6/2011; and (5) Vocational evaluation of Alan Winship, MS Ed., dated 5/16/2011. (Dkt. 5–7 at 14). Plaintiff claims that these records are material because, *inter alia,* "they show an ongoing course of medical treatment including a repeat lumbar laminectomy on June 6, 2011, just two years after the same surgery on July 30, 2009." (Dkt. 5–7 at 15).

These materials are dated from 2011, and do not relate to the period on or before the ALJ's September 23, 2010 decision. In addition, these materials do not provide any new and relevant information. Although the records indicate that Plaintiff had a second back surgery, as the Commissioner notes, these records do not speak to Plaintiff's ability to function. (Dkt. 7 at 4). The fact that Plaintiff had a second surgery corroborates Plaintiff's undisputed back impairment, but it does not show that the impairment has caused functional limitations that preclude Plaintiff from engaging in substantial gainful activity during the relevant time period. *See Rivera v. Harris,* 623 F.2d 212, 215–16 (2d Cir.1980) (examining standard that a claimant's impairment must cause functional limitations to constitute a disability under the Act).

Plaintiff contends that Mr. Winship's opinion adds a new limitation of Plaintiff's academic deficits that would impact Plaintiff's ability to successfully participate in vocational rehabilitation. (Dkt. 9 at 6). In his report, Mr. Winship noted that Plaintiff experiences significant academic deficits that would negatively impact Plaintiff's success in a vocational rehabilitation program. (Dkt. 5–6 at 13). However, Mr. Winship further stated that Plaintiff would be limited to "unskilled and semiskilled occupations that are within his residual functional capacity." (*Id.*). The ALJ did incorporate into his RFC that "claimant can only understand, remember, and carry

out simple instructions and tasks." (Tr. 40). Further, the representative jobs named by the VE include the sedentary, unskilled positions of call-out operator and surveillance system monitor. (Tr. 70). As a result, Mr. Winship's opinion is not likely to provide any new or relevant information such that it would alter the ALJ's conclusion. *See Harris v. Astrue,* 935 F.Supp.2d 603, 609 (W.D.N.Y.2013) ("The inclusion of this report is immaterial insofar as it would not have changed the ALJ's opinion here. Therefore, it need not be further considered."). Accordingly, the Appeals Council did not err in rejecting the opinion.

Plaintiff argues that the Appeals Council failed to include some of his submitted materials in the record on appeal. (Dkt. 5–7 at 15). To the extent that the Appeals Council erred in omitting Plaintiff's submissions from the record, such an error is harmless. Nothing contained in the newly submitted records would provide a basis for disturbing the ALJ's decision.

### C. The ALJ did not err in determining that Plaintiff's allegations as to the disabling nature of his conditions were less than fully credible.

■ Plaintiff argues that the ALJ did not properly consider his testimony concerning his physical limitations in finding that Plaintiff's testimony was not entirely credible. (Dkt. 5–7 at 15–21). Specifically, Plaintiff contends that the ALJ failed to engage in a credibility analysis with regard to Plaintiff's own testimony, and therefore failed to consider a number of important factors in conducting his credibility analysis. (Dkt. 5–7 at 17–21). According to Plaintiff, "[l]ike a grade school math student, an ALJ must show his work." (Dkt. 9 at 2).

Plaintiff notes that he has received "extensive medical treatment" in an attempt to alleviate his symptoms, including two back surgeries, treatment by a pain specialist, physical therapy treatments, use of a TENS unit, prescription pain medication, and epidural injections. (Dkt. 5–7 at 18). Further, Plaintiff points to his MRI, lumbar myelogram, CT scan, and treatment notes as objective evidence supporting his allegations of back pain. (Dkt. 5–7 at 19).

Plaintiff also contends that the ALJ failed to apply the "substantial credibility enhancement justified by an exemplary work history" as demonstrated by Plaintiff's 22 year earnings record working as a truck driver for a single employer. (Dkt. 5–7 at 20–21).

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.,* No. 1:05–CV–0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Nov. 23, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

In the instant case, the ALJ applied the two-step analysis and found that Plain-

tiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 44). In addition, the ALJ found that claimant's statements were "simply not consistent with the preponderance of the opinions and observations of the medical doctors in this case." (Tr. 45).

The ALJ noted Plaintiff's testimony that he suffered from chronic lower back pain that radiated into his buttock and left leg. (Tr. 41). The ALJ also noted that Plaintiff indicated that he could no longer hunt or ride motorcycles, and that he was consulting a pain management physician to reduce his pain. (Tr. 41).

In assessing Plaintiff's credibility, the ALJ assigned "great weight" to the opinions of Drs. Byrne, Sirotenko, and Hamilton that Plaintiff was capable of performing sedentary work, albeit with some limitations. (Tr. 44).

In evaluating a Plaintiff's credibility, the ALJ must consider several factors, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Stewart v. Barnhart,* 235 F.R.D. 579, 590 (W.D.N.Y.2006); *see* 20 C.F.R. § 404.1529(c). Plaintiff maintains the ALJ did not properly discuss Plaintiff's credibility in light of these factors. (Dkt. 5–7 at 15–21). At some point in his decision, although not necessarily directly in the section associated with the credibility findings, the ALJ did discuss these factors. *See Peach v. Astrue,* No. 08–CV–0741 (FJS), 2009 WL 7113220, at *8 (N.D.N.Y. Dec. 3, 2009) (finding no error in the credibility analysis where the ALJ expressly considered at least one factor and then "[a]t other points in his decision ... also discussed several other factors."). For example, in considering whether Plaintiff was capable of returning to his past relevant work, the ALJ noted that Plaintiff had a "good work history." (Tr. 45). In conducting the psychiatric review technique, the ALJ addressed Plaintiff's activities of daily living. (Tr. 41).

Although Plaintiff argues that the ALJ did not properly evaluate the credibility of his complaints regarding the intensity, persistence, and limiting effects of his symptoms, these subjective complaints of pain conflict with both the medical evidence of record and Plaintiff's own admissions. Despite Plaintiff's testimony that he is totally disabled by his lower back pain, Plaintiff's own reports of activities of daily living suggest that Plaintiff is capable of performing sedentary work. Sedentary work requires that an individual be able to

sit for six hours in an eight hour workday. 20 C.F.R. § 404.1567(a). However, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seatbelted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir.2004). Plaintiff reported that he could stand for one half hour, walk one half mile, and sit for 45 minutes to an hour. (Tr. 62–64). Plaintiff also stated that he could drive, do basic activities of daily living, and some light cooking. (Tr. 334, 359). Accordingly, Plaintiff's own statements suggest that he is capable of performing sedentary work with limitations.

As the ALJ stated, the medical record does not corroborate Plaintiff's subjective symptomology to the disabling extent he alleges. Although Plaintiff's medical record highlights a number of limitations, Plaintiff's physicians each stated that Plaintiff was capable of performing sedentary work with some limitations. (*See* Tr. 361, 336, 340, 255–56, 416). The ALJ extensively incorporated these limitations into the RFC. (Tr. 40).

■ "In making a credibility determination, the hearing officer 'is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Greene v. Colvin*, 936 F.Supp.2d 216, 226 (W.D.N.Y. 2013) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir.2010)). "Rather, the hearing officer 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Id.* (quoting *Genier*, 606 F.3d at 49). Given the medical evidence stating that Plaintiff is capable of performing work supported by the ALJ's RFC, and given that the ALJ stated that Plaintiff's

testimony is less than credible because it conflicts with the medical evidence in the record, the Court can find no error in the Commissioner's credibility analysis. *See Serra v. Sullivan*, 762 F.Supp. 1030, 1034–35 (W.D.N.Y.1991) ("It is the [Commissioner's] function not the district court's to appraise the credibility of witnesses, including the plaintiff.").

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's determination that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied. Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.